**KINGDOMWARE TECHNOLOGIES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 12–173C**

United States Court of Federal Claims.

(Filed: November 27, 2012)

Timothy H. Power, Sonoma, CA, for plaintiff.

Robert C. Bigler, United States Department of Justice, Washington, D.C., with whom were Stuart F. Delery, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director, for defendant.

## OPINION

FIRESTONE, Judge.

Plaintiff Kingdomware Technologies, Inc. ("plaintiff"), a service-disabled veteran-owned small business, brings this bid protest claim seeking injunctive relief compelling the Department of Veterans Affairs ("VA") to comply with the Veterans Benefits, Health Care, and Information Technology Act of 2006, 38 U.S.C. §§ 8127–28 (2006 & West Supp.2012) ("the 2006 Act" or the "Act"). Plaintiff filed an amended complaint on July 18, 2012, alleging that VA conducted three procurements in violation of the 2006 Act by failing to set aside those procurements for veteran-owned small businesses ("VOSBs") or service-disabled veteran-owned small businesses ("SDVOSBs"), such as plaintiff. For the purposes of the pending cross-motions for judgment on the administrative record, the parties have stipulated to the facts in regard to one of the three procurements at issue. The parties' cross-motions focus only on the legal question of whether VA failed to comply with the 2006 Act in conducting this procurement.[1] For the reasons that follow, the court **GRANTS** the government's motion for judgment on the stipulated facts, and **DENIES** plaintiff's motion.

## I. STATUTORY AND REGULATORY FRAMEWORK

 This case turns on a question of statutory interpretation: whether, under the 2006 Act, VA must first determine if it can conduct its acquisitions using restricted competition among SDVOSBs or VOSBs before deciding to use another procurement method,

---

1. In its cross-motion for judgment on the stipulated facts, the government also argued that Kingdomware was not verified by VA as an eligible SDVOSB or VOSB as required by the 2006 Act, and was therefore ineligible for award under the Act. Def.'s Cross–Mot. at 2. This database error has since been corrected, and plaintiff is now listed as a certified SDVOSB. See Pl.'s Resp., Ex. 5. The government no longer disputes that plaintiff is a certified SDVOSB under the 2006 Act. Def.'s Reply at 14 n.2.

the Federal Supply Schedule ("FSS"), to meet its requirements. In particular, the court must determine whether Congress intended that VA retain its discretion to procure goods and services from the FSS, in light of the set-aside procedures set forth in the 2006 Act. If Congress is silent as to this issue, the court must determine whether VA's interpretation, that it does not to need consider restricted competition among SDVOSBs and VOSBs before procuring from the FSS, is reasonable with regards to the statutory language, purpose, and legislative history of the 2006 Act. The answer to this question depends on the terms and structure of the Act itself, and on Congress' understanding of the relationship between the Act and the procurement methods available to VA under the Federal Acquisition Regulations. In several decisions, the Government Accountability Office ("GAO") has taken the position that the legislation and its regulations mandate that VA must determine whether it can set aside each of its procurements for restricted competition among SDVOSBs and VOSBs before using the FSS. VA has elected not to follow the GAO decisions, including in the present case.[2]

This particular question of statutory interpretation is a case of first impression before this court. To better understand the dispute over the proper interpretation of the 2006 Act, the court sets forth below the statutory and regulatory framework relevant to the FSS procurement at issue together with the GAO precedent and VA's response.

### A. The Federal Supply Schedule.

Federal agencies traditionally procure supplies using full and open competition to en-

sure that the public receives the best value possible, using procedures outlined in the Federal Acquisition Regulations ("FAR"). *See* 48 C.F.R. ("FAR") § 14.000 *et seq.* (sealed bidding procedures); FAR § 15.000 *et seq.* (negotiated acquisition procedures). Individual agencies, including VA, are permitted to deviate from the general FAR. *See* FAR § 814.104 *et seq.* (containing sealed bidding procedures unique to VA); FAR § 815.303 (containing negotiated acquisition procedures unique to VA); FAR § 819.7001 *et seq.* (implementing in part the 2006 Act at issue here). VA's unique acquisition regulations are referred to as the Veterans Affairs Acquisition Regulations ("VAAR").

When procuring supplies or services, an agency may be required to use certain sources or set aside procurements for certain types of contractors. *See* FAR § 8.002 (listing the order of priority when ordering supplies and services). FAR Part 19 includes provisions relating to contract set-asides for small businesses generally and for certain types of small businesses, such as women-owned small businesses or economically–disadvantaged small businesses. *See* FAR § 19.000(a)(3). These set-aside provisions also include set-asides for SDVOSBs,[3] such as plaintiff, pursuant to the Veterans Benefit Act of 2003, 15 U.S.C. § 657f (2006).[4] FAR Part 19 mandates that small business set-asides be used within or over certain contracting thresholds when the contracting officer reasonably expects to receive offers from two or more responsible businesses and the award will be competitive or awarded at fair market price. FAR § 19.502–2(a), (b). In

---

**2.** GAO decisions are not binding authority, but may be "instructive in the area of bid protests." *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1038 n. 4 (Fed.Cir.2009).

**3.** FAR Part 19 also recognizes VOSBs, see FAR § 19.201(a) ("It is the policy of the Government to provide maximum practicable opportunities in its acquisitions to small business, *veteran-owned small business*, service-disabled veteran-owned small business, HUBZone small business, small disadvantaged business, and women-owned small business concerns.") (emphasis added), although no separate VOSB program like the set-aside program for SDVOSBs is found in FAR Part 19.

**4.** The Veterans Benefit Act of 2003 states, in part:

In accordance with this section, a contracting officer may award contracts on the basis of competition restricted to small business concerns owned and controlled by service-disabled veterans if the contracting officer has a reasonable expectation that not less than 2 small business concerns owned and controlled by service-disabled veterans will submit offers and that the award can be made at a fair market price.

15 U.S.C. § 657f(b).

addition, contracting officers conducting acquisitions over certain contracting thresholds must preference several specialized small business set-aside programs, including that for SDVOSBs, before using a general small business set-aside. FAR § 19.203(c). Small business set-asides have priority over acquisitions using full and open competition. FAR § 19.203(e).

Although the traditional acquisition and set-aside procedures described above are appropriate for many acquisitions, it is often inefficient to use these methods for smaller acquisitions. To provide federal agencies with a "simplified process for obtaining commercial supplies and services at prices associated with volume buying," the General Services Administration ("GSA") has established the Federal Supply Schedule ("FSS"). FAR § 8.402(a). Contractors agree to provide supplies and services at stated prices for given periods of time on the FSS, permitting federal agencies to buy supplies directly from the FSS, rather than holding a publicly-advertised full and open competition for every individual requirement. *Id.* Orders placed against the FSS are deemed to satisfy the conditions of full and open competition and are not subject to the requirements of traditional procurement procedures, including the set-aside requirements established in FAR Part 19. FAR § 8.404(a).

 Agency discretion to use the FSS is usually unrestricted. Absent a statutory or regulatory requirement to the contrary, an agency generally retains unfettered discretion to select the procurement method it wishes to use and in particular, whether it wishes to meet its acquisition requirements using the FSS. *K–Lak Corp. v. United States,* 98 Fed.Cl. 1, 8 (2011) (quoting *Tyler Constr. Grp. v. United States,* 570 F.3d 1329, 1334 (Fed. Cir.2009)) ("Federal procurement entities have 'broad discretion to determine what particular method of procurement will be in the best interests of the United States in a particular situation.' "). Importantly for this case, it is well-settled that when placing an order against the FSS, the agency is

exempt from the small business set-aside programs under FAR Part 19. FAR §§ 8.404(a), 8.405–5(a), 19.502–1(b); see *K–Lak,* 98 Fed.Cl. at 2 n. 3 ("[T]he Small Business Program rules in FAR Part 19 do not apply to orders placed against and fully within the scope of existing FSS contracts.").

The FSS has therefore been historically utilized as a procurement method separate and apart from traditional procurement methods and set-aside provisions found elsewhere in the FAR. The parties' dispute in this case centers on whether the language of the 2006 Act alters the traditional relationship between the FSS and small business set-asides by mandating that VA first determine whether it can set aside all of its procurement activities for restricted competition among SDVOSBs and VOSBs before deciding to meet its requirements through the FSS. The court now turns to the 2006 Act and its implementing regulations.

### B. The 2006 Act and its regulations.
#### 1. The 2006 Act.

Congress enacted the Veterans Benefits, Health Care, and Information Technology Act as Sections 502 and 503 of Public Law 109–461 in 2006.[5] The 2006 Act applies only to supplies and services procured by VA. *See* 48 C.F.R. § 819.7002 ("This subpart [implementing the 2006 Act] applies to VA contracting activities and to its prime contractors."); *Angelica Textile Servs., Inc. v. United States,* 95 Fed.Cl. 208, 222 (2010). The 2006 Act requires VA to set goals for SDVOSB and VOSB participation in VA contracts, and provides for several contracting tools, including set-asides and noncompetitive procurement procedures, to achieve the goal of increasing SDVOSB and VOSB participation. Plaintiff's protest centers on whether, under § 8127(d) of the 2006 Act, VA is required to conduct market research to determine if VA procurements should be set aside for SDVOSBs or VOSBs before VA acquires supplies and services using the FSS. Section 8127 of the 2006 Act reads, in relevant part:

---

**5.** The 2006 Act was amended in 2008, 2010, 2011 and 2012, but those amendments do not affect the portions of the Act relevant in this case.

**(a) Contracting goals.**—(1) In order to increase contracting opportunities for small business concerns owned and controlled by veterans and small business concerns owned and controlled by veterans with service-connected disabilities, the Secretary shall—

 (A) establish a goal for each fiscal year for participation in Department contracts (including subcontracts) by small business concerns owned and controlled by veterans who are not veterans with service-connected disabilities in accordance with paragraph (2); and

 (B) establish a goal for each fiscal year for participation in Department contracts (including subcontracts) by small business concerns owned and controlled by veterans with service-connected disabilities in accordance with paragraph (3).

(2) The goal for a fiscal year for participation under paragraph (1)(A) shall be determined by the Secretary.

(3) The goal for a fiscal year for participation under paragraph (1)(B) shall be not less than the Government-wide goal for that fiscal year for participation by small business concerns owned and controlled by veterans with service-connected disabilities under section 15(g)(1) of the Small Business Act (15 U.S.C. 644(g)(1)).

. . .

**(b) Use of noncompetitive procedures for certain small contracts.**—For purposes of meeting the goals under subsection (a), and in accordance with this section, in entering into a contract with a small business concern owned and controlled by veterans for an amount less than the simplified acquisition threshold (as defined in section 134 of title 41[currently, $100,000], a contracting officer of the Department may use procedures other than competitive procedures.

**(c) Sole source contracts for contracts above simplified acquisition threshold.**— For purposes of meeting the goals under subsection (a), and in accordance with this section, a contracting officer of the Department may award a contract to a small business concern owned and controlled by veterans using procedures other than competitive procedures if—

(1) such concern is determined to be a responsible source with respect to performance of such contract opportunity;

(2) the anticipated award price of the contract (including options) will exceed the simplified acquisition threshold (as defined in section 134 of title 41 [currently $100,000] ) but will not exceed $5,000,000; and

(3) in the estimation of the contracting officer, the contract award can be made at a fair and reasonable price that offers best value to the United States.

**(d) Use of restricted competition.**—Except as provided in subsections (b) and (c), for purposes of meeting the goals under subsection (a), and in accordance with this section, a contracting officer of the Department shall award contracts on the basis of competition restricted to small business concerns owned and controlled by veterans if the contracting officer has a reasonable expectation that two or more small business concerns owned and controlled by veterans will submit offers and that the award can be made at a fair and reasonable price that offers best value to the United States.

38 U.S.C. § 8127. The language in § 8127(d) stating that a contracting officer must have "a reasonable expectation that two or more small business concerns owned and controlled by veterans will submit offers and that the award can be made at a fair and reasonable price" is often referred to as the "Rule of Two." *See Distrib. Solutions, Inc. v. United States,* 104 Fed.Cl. 368, 390 (2012). The "Rule of Two" is common among small business set-aside procedures. *See, e.g.,* FAR § 19.502–2(b); *Distrib. Solutions,* 104 Fed.Cl. at 390. A contracting officer conducts market research, such as by searching through a database of small businesses, to determine whether the "Rule of Two" is satisfied. See 48 C.F.R § 810.001 (a VAAR instructing a VA contracting team to conduct market research using the database for SDVOSBs and VOSBs).

Section 8127(i) of the 2006 Act also prioritizes SDVOSBs and VOSBs for VA contracts

over other small business contracting preferences, such as those outlined in FAR Part 19, that VA may use:

(i) **Priority for contracting preferences.**—Preferences for awarding contracts to small business concerns shall be applied in the following order of priority:

(1) Contracts awarded pursuant to subsection (b), (c), or (d) to small business concerns owned and controlled by veterans with service–connected disabilities.

(2) Contracts awarded pursuant to subsection (b), (c), or (d) to small business concerns owned and controlled by veterans that are not covered by paragraph (1).

(3) Contracts awarded pursuant to—

(A) section 8(a) of the Small Business Act (15 U.S.C. 637(a)); or

(B) section 31 of such Act (15 U.S.C. 657a).

(4) Contracts awarded pursuant to any other small business contracting preference.

*Id.* § 8127(i).

Finally, § 8128 of the 2006 Act, also addressing contracting preferences, states, in part:

(a) **Contracting priority.**—In procuring goods and services pursuant to a contracting preference under this title or any other provision of law, the Secretary shall give priority to a small business concern owned and controlled by veterans, if such business concern also meets the requirements of that contracting preference.

*Id.* § 8128(a).

### 2. Regulations implementing the 2006 Act.

The VAAR implementing the 2006 Act can be principally found at 48 C.F.R. ("VAAR") Part 819. The regulations acknowledge the goal-setting provision of the Act in VAAR § 819.201: "The Secretary shall establish goals for each fiscal year for participation in Department contracts by SDVOSBs and VOSBs." The VAAR further state that "Sections 502 and 503 of the Veterans Benefits, Health Care, and Information Technology Act of 2006 (38 U.S.C. § 8127–8128), created an acquisition program for small business concerns owned and controlled by service-disabled veterans and those owned and controlled by veterans for VA." VAAR § 819.7001(a). The VAAR explain that the "purpose of the program is to provide contracting assistance to SDVOSBs and VOSBs." *Id.* § 819.7001(b).

VAAR Subpart 819.70 implements the portions of the Act at issue here. First, the regulations state that the 2006 Act applies to "VA contracting activities and to its prime contractors," and outline the eligibility requirements for SDVOSBs and VOSBs. VAAR §§ 819.7002–03. Next, VAAR § 819.7004 echoes the list of priorities found in § 8127(i) of the 2006 Act:

In determining the acquisition strategy applicable to an acquisition, the contracting officer shall consider, in the following order of priority, contracting preferences that ensure contracts will be awarded:

(a) To SDVOSBs;

(b) To VOSB, including but not limited to SDVOSBs;

(c) Pursuant to—

(1) Section 8(a) of the Small Business Act (15 U.S.C. 637(a)); or

(2) The Historically–Underutilized Business Zone (HUBZone) Program (15 U.S.C. 657a); and

(d) Pursuant to any other small business contracting preference.

VAAR § 819.7005 then implements the terms of the 2006 Act in regard to SDVOSBs, and in particular the "Rule of Two," stating, in relevant part:

(a) The contracting officer shall consider SDVOSB set-asides before considering VOSB set-asides. Except as authorized by 813.106 [involving contracts exceeding the micro-purchase threshold up to $5 million], 819.7007 [involving awards to SDVOSBs of under $5 million on a sole source basis] and 819.7008 [involving awards to VOSBs of under $5 million on a sole source basis], the contracting officer shall set-aside an acquisition for competition restricted to SDVOSB concerns upon a reasonable expectation that,

(1) Offers will be received from two or more eligible SDVOSB concerns; and

(2) Award will be made at a fair and reasonable price.

VAAR § 819.7006 contains an identical provision for VOSBs. The remainder of VAAR Subpart 819.70 deals with sole source awards to SDVOSBs and VOSBs, and the contract clauses that a contracting officer must include in solicitations and contracts for acquisitions under Subpart 819.70. VAAR §§ 819.7007–09. Several other scattered portions of the VAAR implement other parts of the 2006 Act. *See, e.g.*, VAAR § 802.101 (laying out definitions applicable to the VAAR implementing the Act). The VAAR themselves do not expressly address the relationship between the 2006 Act and the FSS. Rather, as discussed *infra,* VA has taken the position in the preamble to the VAAR that the 2006 Act does not apply when VA elects to use the FSS to meets its acquisition needs.

### C. The GAO's *Aldevra* decision and VA's response.

On October 11, 2011, the GAO sustained a protest by Aldevra LLC, a SDVOSB challenging VA's use of the FSS before considering SDVOSB and VOSB set-asides in acquiring one skillet, one food slicer, and three griddles for two VA medical centers. *Aldevra*, B–405271 *et al.*, 2011 WL 4826148, at *1 (Comp.Gen. Oct. 11, 2011). VA conceded that there were at least two SDVOSBs capable of meeting the requirements under the challenged solicitations. *Id.* at *2. Aldevra argued that based on the terms of the 2006 Act and the VAAR, VA had to conduct market research to consider SDVOSBs and VOSBs before acquiring these items from the FSS. *Id.* at *1. VA argued in response that it retained its discretion under the Act to determine whether to use the FSS as opposed to SDVOSB or VOSB set-asides. *Id.* at *2. VA in particular relied on the preamble to the final VAAR implementing the Act, in which VA rejected a proposed revision to the VAAR that would have expressly stated that the set-asides and sole source provisions do not apply at the FSS order level. *Id.* at *3. In rejecting that revision to its rule, VA explained that the rule does not apply to the FSS and stated in its rulemaking proceedings that:

We disagree with the commenter and reject the suggestion because this rule does not apply to FSS task or delivery orders. VA does not believe a change to the regulation is needed, and 48 CFR part 8 procedures in the FAR will continue to apply to VA FSS task/delivery orders. Further, VA will continue to follow GSA guidance regarding applicability of 48 CFR part 19 of the FAR, Small Business Programs, which states that set-asides do not apply to FAR part 8 FSS acquisitions.

*Id.* at *3; VA Acquisition Regulation: Supporting Veteran–Owned and Service–Disabled Veteran–Owned Small Businesses, 74 Fed.Reg. 64,619, 64,624 (Dec. 8, 2009) (emphasis added).

In interpreting the 2006 Act and its regulations, the GAO rejected VA's interpretation of the 2006 Act and VA's implementing regulation preamble. The GAO found that VA, before electing to use the FSS, must conduct market research to determine whether two or more SDVOSBs or VOSBs are capable of performing the requirements of the challenged solicitations, and, if so, that VA must set aside the solicitations for limited competition. *Aldevra*, 2011 WL 4826148, at *3. The GAO found "nothing in the [2006] Act or the VAAR that provides the agency with discretion to conduct a procurement under FSS procedures without first determining whether the acquisition should be set aside for SDVOSBs." *Id.* at *2. Instead, based on the use of "shall" in both § 8127(d) of the 2006 Act and the implementing VAAR, the GAO found that "the [2006] Act and the VAAR are unequivocal; the VA shall award contracts on the basis of competition restricted to SDVOSBs" where the conditions under the statute and regulations are met. *Id.* The GAO also found that FAR Part 8's provision that FSS procurements are exempt from FAR Part 19 set-asides only pertains to SDVOSB set-asides under the Veterans Benefit Act of 2003–which applies government-wide–and not to the 2006 Act, which relates only to VA procurements. *Id.* at *3–4. In distinguishing the two acts, the GAO further found that, in contrast to the 2006 Act, the language in the Veterans Benefit Act of 2003 used the permissive "may" rather than

"shall" in directing a contracting officer to award contracts based on the "Rule of Two" for SDVOSBs. *Id.* at *4, *see supra* note 4. For these reasons, the GAO recommended in *Aldevra* that VA cancel and re-solicit the challenged solicitations using an SDVOSB set-aside. *Id.*

■ Following the *Aldevra* ruling, VA issued a memo to all VA acquisition and procurement officials stating that the GAO's recommendation and its interpretation of the 2006 Act should not be followed.[6] VA instructed its acquisition officials to continue using the FSS in line with VA's interpretation of the 2006 Act as inapplicable to FSS procurements. The GAO has since followed the rationale of *Aldevra* in several other protests, including plaintiff's protest before the GAO regarding the procurement at issue in this case, and VA has consistently declined to follow GAO's recommendation. *See, e.g., Kingdomware Techs.*, B–406507, 2012 WL 1942256, at *1 (Comp.Gen. May 30, 2012).

The GAO has not, however, consistently rejected VA's decision to use the FSS without first applying the "Rule of Two" analysis. In another recent protest, the GAO held that VA may use the FSS first if it undertakes the "Rule of Two" analysis in selecting among FSS vendors. *Crosstown Courier Serv., Inc.*, B–406336, 2012 WL 1405913, at *1 (Comp.Gen. Apr. 23, 2012). In particular, the GAO held that nothing in § 8127(d) "requires VA to conduct its market research

exclusively on the open market, as opposed to among FSS vendors.... Thus, the agency's initial decision to conduct market research confined to FSS vendors was not, in and of itself, objectionable, to the extent that the VA sought to determine whether there were two or more SDVOSB (or VOSB) FSS vendors capable of meeting its requirement." *Id.* at *2. Based on these decisions, uncertainty remains as to when and how VA must apply the set-aside procedures outlined in the 2006 Act.[7]

## II. STIPULATED FACTS AND PROCEDURAL HISTORY

The following facts have been stipulated to by the parties. In January 2012, VA determined that it needed to procure an Emergency Notification Service ("ENS") for the Veterans Integrated Service Network 5, a grouping of four VA medical centers and associated outpatient clinics. The purpose of an ENS is to rapidly deliver messages to VA personnel with critical information and notices in an emergency situation, such as a natural disaster. The proposed contract was intended to provide ENS services only until a VA-wide notification system is implemented, which is anticipated to occur during fiscal year 2012.

VA's contracting officer decided to satisfy VA's requirements under FAR Subpart 8.4 using the FSS. The VA contracting officer

---

**6.** Under the Competition in Contracting Act, 31 U.S.C. § 3554(b), GAO decisions are only recommendations and not binding on VA. *Jacobs Tech. Inc. v. United States*, 100 Fed.Cl. 186, 196 n. 21 (2011).

**7.** To further complicate the issue, the GAO also found in *Alternative Contracting Enterprises, LLC*, B–406265 *et al.*, 2012 WL 989288 (Comp.Gen. Mar. 26, 2012), that because the 2006 Act is silent as to the effect of its set-aside provisions on "AbilityOne" contracting set-asides–a separate, mandatory contracting preference for nonprofits for the blind or severely disabled–VA reasonably interpreted that "AbilityOne" contractors maintained their priority over SDVOSBs and VOSBs notwithstanding the terms of the 2006 Act. The GAO deferred to VA's interpretation of its regulations in the preamble of the regulations implementing the 2006 Act and to VA's internal guidelines. *Id.* This court has similarly deferred to VA's interpretation of these statutory preferences

in light of the Act's silence. *Angelica Textile*, 95 Fed.Cl. at 222.

In denying a request for reconsideration of the *Alternative Contracting* decision, the GAO distinguished its decision in *Aldevra*, stating that the *Alternative Contracting* case involved VA's reasonable interpretation of two unambiguous but conflicting statutory mandates, while *Aldevra* involved "the interpretation of the VA Act without reference to other statutory preferences," and that under *Aldevra*, "the VA's elevation of FSS acquisitions over SDVOSB and VOSB setasides" was inconsistent with the plain meaning of the 2006 Act. *Pierce First Med.*, B–406291.3 *et al.*, 2012 WL 2150219, at *3–4 (Comp. Gen. June 13, 2012). The VA also went on to disagree with the protesters' argument that "the VA Act preference operates without regard to any other provision of law." *Id.* at *4. Rather, the GAO found that, at least with regard to small business set aside priorities, the VA Act "anticipates the operation of other statutory preferences." *Id.*

conducted market research under FAR Subpart 8.4 and identified three possible sources for the ENS on the FSS. However, the contracting officer determined that none of the three sources could meet VA's requirements, and a limited source FSS justification was conducted in accordance with FAR § 8.405–6.

On or about February 14, 2012, the contracting officer sent Request for Quote VA245–12–Q–0078 ("RFQ") to FSS vendor Everbridge, Inc. ("Everbridge") to solicit a quote for ENS services. The RFQ included one base year and two option years. Everbridge submitted a quote of $33,824.10 for the base year of March 1, 2012 through February 28, 2013; $33,824.10 for option year one, if exercised, and $33,824.10 for option year two, if exercised. On February 22, 2012, after having determined that Everbridge offered a fair and reasonable price, the contracting officer awarded a task order contract to Everbridge pursuant to its FSS blanket purchase agreement for the base year at $33,824.10 and a total amount of $101,472.30 if both options years were exercised.

The contracting officer posted the contract award to the Federal Procurement Data System–Next Generation reporting system. Thereafter, on March 14, 2012, plaintiff filed a bid protest with the GAO objecting to the award on the basis that VA allegedly had not complied with the 2006 Act because it had not set aside the contract for limited competition among SDVOSBs before using the FSS. *Kingdomware Techs.*, B–406507, 2012 WL 1942256, at *1 (Comp.Gen. May 30, 2012). On May 30, 2012, the GAO issued a decision sustaining the protest for the reasons discussed in the *Aldevra* opinion.[8] *Id.* On August 8, 2012, VA responded to the GAO and Kingdomware that VA would decline to follow the GAO's recommendations in its decision.

On March 15, 2012, plaintiff filed its initial complaint in this court. On July 18, 2012, plaintiff filed an amended complaint alleging that VA conducted three procurements in violation of the 2006 Act by failing to set aside those procurements for VOSBs and SDVOSBs, including plaintiff. At a status conference held on August 21, 2012, the parties agreed to select one of the three claims for which they would not dispute the underlying administrative record, and submit cross-motions for judgment on the stipulated facts that focused on the sole legal question of whether the 2006 Act mandates that VA conduct procurements in accordance with § 8127(d) of the Act before ordering against the FSS.

In its cross-motion, plaintiff argues that the GAO is correct in finding that the 2006 Act mandates that VA first determine whether SDVOSB or VOSB set-asides should be used before VA can order against the FSS. The government argues in response that the 2006 Act is only a goal-setting statute and simply provides VA with tools to meet the SDVOSB and VOSB contracting goals set by the Act. The government contends that nothing in the 2006 Act restricts VA's discretion to order against the FSS.

For the reasons discussed below, the court disagrees with plaintiff and the GAO, and finds that VA need not comply with the "Rule of Two" under § 8127(d) of the Act before using the FSS to meet its procurement needs.

### III. STANDARD OF REVIEW

The applicable standard of review in a bid protest is provided by the Adminis-

---

8. This opinion also states that VA "conducted market research in connection with this procurement and found that there were at least 20 SDVOSBs that could perform the requirements at issue." *Kingdomware Techs.*, 2012 WL 1942256, at *1. Plaintiff asserts that this demonstrates that VA knew SDVOSBs were capable of performing the contract at issue. The government in response contends that the research was conducted in 2008 for the original ENS procurement, not the procurement currently being protested. Def.'s Cross–Mot. at 9 n.4. The government further argues that even if SDVOSBs were on the FSS for this type of contract, this does not mean they were qualified to perform the stipulated contract. *Id.* For the purposes of these cross-motions, the court will disregard this dispute. Even if VA did perform market research that revealed two or more SDVOSBs capable of performing the services, the fact remains that VA chose to order against the FSS for the services at issue here, and the only question before the court is whether ordering against the FSS before setting aside the contract for SDVOSB restricted competition was permissible under the terms of the 2006 Act.

trative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A) and is highly deferential. *Advanced Data Concepts, Inc. v. United States,* 216 F.3d 1054, 1058 (Fed.Cir.2000). The court's review is limited to determining whether an agency's action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Al Andalus Gen. Contracts Co. v. United States,* 86 Fed. Cl. 252, 262 (2009) (quoting *Banknote Corp. of Am. v. United States,* 365 F.3d 1345, 1350– 51 (Fed.Cir.2004)). Under this standard, the plaintiff bears a "heavy burden." *E.W. Bliss Co. v. United States,* 77 F.3d 445, 449 (Fed. Cir.1996). "[A] bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1332 (Fed.Cir.2001). Plaintiff's bid protest is based upon an alleged violation of law. When challenging a procurement on this ground, "the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations." *Id.* at 1333 (internal quotations omitted).

## IV. DISCUSSION

### A. The *Chevron* framework.

▮▮▮ The parties agree that this case only involves a question of statutory interpretation: whether the terms of the 2006 Act mandate that VA set aside every acquisition for SDVOSBs or VOSBs if two or more SDVOSBs or VOSBs can provide a fair and reasonable price for the contract before meeting its requirements using the FSS. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), provides the framework for deciding the statutory interpretation question presented in this case. Under *Chevron,* this court first must determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842, 104 S.Ct. 2778. To determine the intent of Con-

gress, the court looks to the language of the statute itself. *Delverde, SrL v. United States,* 202 F.3d 1360, 1363 (Fed.Cir.2000). Beyond the statute's text, tools of statutory construction may be used, including the statute's structure, canons of statutory construction, and legislative history. *Id.;* see also *Heino v. Shinseki,* 683 F.3d 1372, 1378 (Fed. Cir.2012). "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. 2778.

▮▮▮ However, "if the statute is silent or ambiguous with respect to the specific issue," a court must proceed to the second step of *Chevron,* which is to ask whether the implementing agency's interpretation of the statute is reasonable. *Id.* at 843, 104 S.Ct. 2778; *see also Ad Hoc Shrimp Trade Action Comm. v. United States,* 596 F.3d 1365, 1369 (Fed.Cir.2010). The court must not "impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation." *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778 (footnote omitted). Rather, "*Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." *Nat'l Cable & Telecomm'ns Ass'n v. Brand X Internet Servs.,* 545 U.S. 967, 980, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005) (citation omitted).

▮▮▮ In determining whether an agency's interpretation of a statute is reasonable, an agency's construction is entitled to deference if it is not in conflict with the plain language of the statute or the congressional intent or purpose of the statute. *See Nat'l R.R. Passenger Corp. v. Boston and Me. Corp.,* 503 U.S. 407, 417, 112 S.Ct. 1394, 118 L.Ed.2d 52 (1992) ("If the agency interpretation is not in conflict with the plain language of the statute, deference is due."); *Japan Whaling Ass'n v. Am. Cetacean Soc'y,* 478 U.S. 221, 233, 106 S.Ct. 2860, 92 L.Ed.2d 166 (1986); *Chem. Mfrs. Ass'n v. NRDC, Inc.,* 470 U.S. 116, 126, 105 S.Ct. 1102, 84 L.Ed.2d 90 (1985) ("We should defer to [the agency's] view unless the legislative history or the

purpose and structure of the statute clearly reveal a contrary intent on the part of Congress."). In addition, an agency's interpretation of a particular statutory provision qualifies for *Chevron* deference when that interpretation is reached through formal proceedings, such as by an agency's power to engage in notice-and-comment rulemaking. *United States v. Mead Corp.*, 533 U.S. 218, 229, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001); *Wheatland Tube Co. v. United States*, 495 F.3d 1355, 1360 (Fed.Cir.2007).

■■■■■ Even where an agency's interpretation of a statute was not promulgated in the exercise of making rules with the force of law, that agency interpretation may still be entitled to deference according to its persuasiveness. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944); *Sursely v. Peake*, 551 F.3d 1351, 1355 (Fed. Cir.2009). While this standard does not entail the same degree of deference as the *Chevron* standard, it requires courts to give some deference to informal agency interpretations of ambiguous statutes, based on "the degree of the agency's care, its consistency, formality, and relative expertness, and ... the persuasiveness of the agency's position." *Mead*, 533 U.S. at 228, 121 S.Ct. 2164. The court will consider the specialized experience of the agency and "the value of uniformity in its administrative and judicial understandings of what a national law requires." *Id.* at 234, 121 S.Ct. 2164. The degree of deference afforded to an agency's informal interpretation of a statute will also depend on its "thoroughness, logic, and expertise, its fit with prior interpretations, and any other source of weight." *Id.* at 235, 121 S.Ct. 2164.

■■■■■ In addition, an agency's interpretation of its own regulations is entitled to substantial deference when that regulation is ambiguous or silent on the issue in question. *Price v. Panetta*, 674 F.3d 1335, 1341–42 (Fed.Cir.2012) (citations omitted); *Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). That degree of deference applies even when the agency's interpretation is offered in the litigation in which the argument in favor of deference is made, as long as there is "no reason to suspect that the interpretation does not reflect the agen-

cy's fair and considered judgment on the matter in question." *Auer*, 519 U.S. at 462, 117 S.Ct. 905; *see also Panetta*, 674 F.3d at 1342 (citations omitted). However, an interpretation prompted by litigation and that is unsupported by regulations, rulings, or administrative practice is not entitled to deference. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988).

**B. The 2006 Act is silent as to its application to the FSS and as a "goal-setting" statute is ambiguous as to the discretion reserved to VA.**

■■■ As noted above, under the first step of the *Chevron* analysis, the court must first determine whether Congress has spoken directly to the issue of whether VA must first determine if the "Rule of Two" is satisfied—that is, whether the contracting officer has a reasonable expectation that two or more small business concerns owned and controlled by veterans will submit offers and that the award can be made at a fair and reasonable price that offers best value to the United States—before ordering against the FSS.

Plaintiff principally argues that the 2006 Act is unambiguous, and thus this court's inquiry should stop at *Chevron* step one. Specifically, plaintiff contends that the plain language of the 2006 Act expresses Congress' intent that VA, for every acquisition, must conduct market research to determine whether it must set aside that procurement for SDVOSBs or VOSBs before awarding a contract using a different procurement method. Plaintiff relies on the language of § 8127(d), which states that "for the purposes of meeting the goals under subsection (a), and in accordance with this section, a contracting officer of the Department *shall award* contracts on the basis of competition restricted to small business concerns owned and controlled by veterans ...." (emphasis added). Plaintiff argues that the use of the phrase "shall award" in this instance—in contrast to the use of "may award" in subsections (b) and (c) of § 8127—unequivocally establishes a mandatory set-aside. Pl.'s Mot. at 12 (citing *United States v. Thoman*, 156

U.S. 353, 360, 15 S.Ct. 378, 39 L.Ed. 450 (1895)).

Plaintiff argues that its view is supported by a line of cases concerning the HUBZone set-aside, a small business set-aside authorized by the Small Business Act, 15 U.S.C. § 657a.[9] *See generally DGR Assocs., Inc. v. United States,* 94 Fed.Cl. 189 (2010); *Mission Critical Solutions v. United States,* 91 Fed.Cl. 386, 411 (2010); *Contract Mgmt., Inc. v. Rumsfeld,* 291 F.Supp.2d 1166 (D. Hawai'i 2003). The HUBZone cases involved the issue of whether the Small Business Act granted priority to the HUBZone program over another small business set-aside program called the Section 8(a) program, which assists small businesses owned and controlled by socially and economically disadvantaged individuals. The application of the FSS was not at issue in these cases. Rather, courts were called on to decide whether Congress, by stating that "notwithstanding any other provision of law," agencies "shall award" to qualified HUBZone businesses, intended to create a super priority for HUBZone businesses.[10] The statutory language provided:

> *Notwithstanding any other provision of law* ... a contract opportunity *shall be awarded* pursuant to this section on the basis of competition restricted to qualified HUBZone small business concerns if the contracting officer has a reasonable expectation that not less than 2 qualified HUBZone small business concerns will submit offers and that the award can be made at a fair market price.

15 U.S.C. § 657a(b)(2) (prior version, amended in 2010) (emphasis added); *see DGR,* 94 Fed.Cl. at 204 (holding that the Small Busi-

ness Act grants priority to the HUBZone program); *Contract Mgmt.,* 291 F.Supp.2d at 1173 (same); *Mission Critical,* 91 Fed.Cl. at 411 (holding that the HUBZone program takes priority over other small business programs). Plaintiff argues that the 2006 Act is like the HUBZone provision of the Small Business Act because it also uses the phrase "shall award" in directing the agency to award contracts based on the "Rule of Two." Plaintiff concludes that the 2006 Act therefore created a mandatory set-aside for SDVOSBs and VOSBs without any exceptions or exclusions.

The government contends that the 2006 Act is a goal-setting statute that does not require VA to set-aside every contract for SDVOSBs and VOSBs where two or more could provide a fair and reasonable price. Rather, the government argues, the phrase "shall award" in the 2006 Act must be read against the Act's goal-setting context. The government asserts, when read as a whole, the Act provides that a contracting officer need only use SDVOSB and VOSB set-asides when it is necessary "for purposes of meeting the goals" established by the Secretary. 38 U.S.C. § 8127(b), (c), (d). According to the government, the 2006 Act gives VA discretion to determine when it will use the set-aside procedures found in the Act to meet those goals. To interpret the statute otherwise, the government argues, would render § 8127(a), the goal-setting provision, meaningless, because a mandatory set-aside procedure would obviate the need for goals.[11]

The government further argues that, given the 2006 Act's silence in regard to the FSS, VA's procurement discretion extends to its

---

9. A HUBZone is a "Historically Underutilized Business Zone." 15 U.S.C. § 632(p)(1). The purpose of the HUBZone program is to "provide Federal contracting assistance for qualified small business concerns located in historically underutilized business zones...." FAR § 19.1301(b).

10. The statutory language of the Small Business Act relied on by the courts in the HUBZone cases has since been removed by an 2010 amendment.

11. In addition, the government contends that when the 2006 Act is read as a whole, the distinction between "may award" in subsections (b) and (c) and "shall award" in subsection (d) of

§ 8127 does not support plaintiff's position. Instead, the government argues, the use of "may" and "shall" in the Act distinguishes among the procedures VA may use to award contracts to SDVOSBs and VOSBs once it decides that it will set aside a contract under the Act. The government contends that a rational reading of the all of the terms of the Act demonstrates that, only when VA chooses to award a contract to meet the goals of the Act, VA is required to use restricted competition between SDVOSBs or VOSBs, unless the contracting officer decides to use the non-competitive procedures that meet the requirements outlined in subsections (b) and (c).

decisions to use the FSS. The government concludes that if Congress had wanted to restrict VA's discretion to use the FSS, it could have. For example, the government argues, VA's discretion could be constrained if the 2006 Act contained the phrase "notwithstanding any other provision of the law," which was included in the HUBZone provision. However, Congress did not so restrict VA's discretion in the 2006 Act.

The government also charges that its reading of the 2006 Act, as opposed to plaintiff's reading, is supported by the Act's legislative history, which "demonstrates that Congress viewed this legislation as providing contracting officers the discretion to setaside procurements, not a mandate that they always do so." Def.'s Cross–Mot. at 15. The government argues that Congress' Joint Explanatory Statement discussing the meaning of § 8127(b)-(d) reflects Congress' intent that VA would retain discretion over choosing to set aside contracts for SDVOSBs or VOSBs:

> VA would be allowed to award non-competitive contracts to small businesses owned and controlled by veterans when the amount of the contract is below the simplified acquisition threshold as defined in section 4 of the Office of Federal Procurement Policy Act (41 U.S.C. s 403). Further, contracting officers would be allowed, but not required, to award sole source contracts to small businesses owned and controlled by veterans to meet the annual goal set by the Secretary for contracts above the simplified acquisition threshold but below $5,000,000. *Contracting officers would retain the option to restrict competition to small businesses owned and controlled by veterans* if the contracting officer has an expectation that two or more such businesses owned by veterans will submit offers for the contract including all contracts exceeding $5,000,000.

152 Cong. Rec. S11,609, S11,615 (daily ed. Dec. 8, 2006) (Joint Explanatory Statement as read into the record) (emphasis added). The Joint Explanatory Statement goes on to state:

> The intent of this provision [§ 8127] in the Compromise Agreement is to emphasize the importance of meeting the contracting goals for veteran and service-disabled veteran-owned businesses by giving those competitive parity with other set-aside categories. The Committees also seek *to give contracting officers the tools to meet veteran and service-disabled veteran–owned business set-aside goals.*
>
> The Committees anticipate that acquisition officials *will exercise reasonable judgment when attempting to meet the several set-aside goals* including giving "preference" to veteran or service-disabled veteran-owned businesses. The goals for veteran and service-disabled veteran owned businesses *are not in any way intended to prevent attainment of other set aside goals.*

*Id.* at S 11,616 (emphasis added).

The government concludes that this legislative history clearly indicates Congress' intention to give VA the tools it needs to aid SDVOSBs and VOSBs in obtaining VA contracts when and if VA chooses to set aside a contract to meet the 2006 Act's goals. Nothing in the legislative history, the government argues, suggests an intention by Congress to establish a mandatory set-aside program that would frustrate VA's attainment of other set-aside goals or limit its use of the FSS.

After consideration of the parties' arguments, the court agrees with the government that plaintiff's interpretation of the 2006 Act is not supported by the plain language of the Act. First, the 2006 Act must be construed in light of its goal-setting provisions and thus the statute is at best ambiguous as to whether it mandates a preference for SDVOSBs and VOSBs for all VA procurements. More specifically, the phrase "shall award" must be read in connection with the other terms in the 2006 Act, which demonstrate that the Act is goal-setting in nature: Subsection (a) of § 8127 directs the Secretary to set goals for SDVOSB and VOSB participation in VA contracts, and the sole source and set-aside requirements in the remainder of § 8127 are couched in terms of meeting those goals. *See* 38 U.S.C. § 8127(b), (c), and (d) (each qualifying its terms with the phrase "for purposes of meeting the goals of subsection (a)"). The Secretary's discretion to set contracting goals for SDVOSBs and VOSBs un-

der the Act contradicts plaintiff's interpretation of the statute as creating a mandatory SDVOSB and VOSB setaside procedure for each and every procurement. Contrary to plaintiff's argument, the goal-setting nature of the statute clouds the clarity plaintiff would attribute to the phrase "shall award" in subsection (d) of the Act, and renders the Act ambiguous as to its application to other procurement vehicles, such as the FSS.

Second, the 2006 Act is silent as to the relationship between its set-aside provision and the FSS and thus the specific issue in this case is not answered by the plain words of the statute. In this connection, the court notes that, generally, the FSS is exempted from small business set-aside requirements under the FAR. *See* FAR § § 8.404(a), 8.405–5(a), 19.502–1(b). In addition, the court cannot ignore the well-settled principle that Congress "can be presumed [to be] . . . knowledgeable about existing law pertinent to legislation it enacts." *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d

1574, 1581 (Fed.Cir.1990) (citing *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184–85, 108 S.Ct. 1704, 100 L.Ed.2d 158 (1988)). Thus, in enacting the 2006 Act, the court must presume that Congress was aware of the historic exception of the FSS from small business set-asides and cannot presume, as plaintiff urges, that Congress intended to extinguish the exception by its silence.[12] The effect of the Act on FSS orders is a legislative gap left for the agency to fill.[13]

Further, the legislative history of the Act undermines plaintiff's interpretation of the 2006 Act. The Joint Explanatory Statement accompanying the 2006 Act states that VA contracting officers "would retain the option to restrict competition to small businesses owned and controlled by veterans" if the "Rule of Two" is met, and that the Act was meant to give VA the "tools" to meet its SDVOSB and VOSB set-aside goals, but not to the detriment of other set-aside goals.[14] 152 Cong. Rec. at S11,615–16. Plaintiff's

**12.** In this regard, the court rejects the GAO's analysis in *Aldevra*, where the GAO held that because FAR Part 19's SDVOSB set-aside provision was created as a government-wide program by the Veterans Benefit Act of 2003, "the exception in the FAR that permits agencies to award task and delivery orders under the FSS without regard to government-wide small business programs . . . does not govern, or apply to, the SDVOSB set-aside program created by the Veterans Benefits, Health Care, and Information Technology Act of 2006." *Aldevra*, 2011 WL 4826148, at *4. While the Veterans Benefit Act of 2003 and the 2006 Act do create distinct setaside programs, the 2006 Act itself is silent as to the relationship between its set-aside provision and the FSS. Therefore, the agency retained its discretion to determine whether and how the 2006 Act's set-aside procedures apply to FSS procurements, and, as discussed *infra*, reasonably concluded that, based on the traditional exemption of the FSS from small business set-asides, it would not apply the 2006 Act's terms to FSS orders.

**13.** Legislation has since been proposed in the House of Representatives to "clarify the contracting goals and preferences of the Department of Veterans Affairs with respect to small business concerns owned and controlled by veterans." H.R. 4048, 112th Cong. § 2 (2012). That bill proposes to amend 38 U.S.C. § 8127 to insert the following section:

(k) Applicability to Federal Supply Schedule– For purposes of meeting the goals under subsection (a), the Secretary shall include the ac-

quisition of goods and services through the use of a Federal supply schedule of the General Services Administration.
*Id.*

**14.** To the extent plaintiff relies on legislative history about the 2006 Act that occurred *subsequent* to the passage of the Act to argue to the contrary, the court agrees with the government that subsequent legislative history is not useful in determining the intent of the Congress that initially passed the 2006 Act. *See Colt Indus., Inc. v. United States*, 880 F.2d 1311, 1313 n.** (Fed.Cir.1989) ("Subsequent legislative history is worthy of little weight."); *Huffman v. Office of Personnel Mgmt.*, 263 F.3d 1341, 1348 (Fed.Cir.2001) ("It is well-established that 'the view of a later Congress cannot control the interpretation of an earlier enacted statute.' ") (citing *inter alia O'Gilvie v. United States*, 519 U.S. 79, 90, 117 S.Ct. 452, 136 L.Ed.2d 454 (1996)).

In fact, the legislative history cited by plaintiff, which addresses whether the terms of the Act apply to FSS orders, serves to confirm that the statute is ambiguous in regard to this point. *See, e.g.*, Follow-up on the U.S. Department of Veterans Affairs Service–Disabled Veteran–Owned Small Business Certification Process: Hearing Before the Subcomm. on Oversight and Investigations and Subcomm. on Economic Opportunity of the H. Comm. on Veterans' Affairs, 1 12th Cong. 19 (Nov. 30, 2011) (question of Bill Johnson, Chairman, H. Subcomm. on Oversight and Investigations) ("[The statute] does not talk about the Federal supply schedule or any of that.").

mandatory set-aside interpretation conflicts with the stated purpose of the Act in its legislative history.

Finally, the court finds that plaintiff's reliance on the HUBZone cases is misplaced. As an initial matter, as noted above, the HUBZone cases dealt with conflicting set-aside preferences under the Small Business Act, not the relationship between set-asides and procurement vehicles, such as the FSS. Moreover, the courts, in determining that the HUBZone set-aside program took priority over other set-aside programs in the Small Business Act, relied on the "shall be awarded" language in that statute as used in conjunction with the phrase "notwithstanding any other provision of law." *See DGR*, 94 Fed.Cl. at 206 ("It is the combination of the two phrases that creates a clear priority for the HUBZone program over the 8(a) program when the standards of the HUBZone program are satisfied."). The 2006 Act does not contain a similar unequivocal phrase that would operate to foreclose use of the FSS prior to satisfying the requirements of § 8127(d).

Taken as a whole, therefore, the court concludes that under *Chevron* step one, the 2006 Act is not plain on its face as to its application to the FSS and is ambiguous with regard to the discretion left to VA in meeting the 2006 Act's goals. The court must now ask whether the implementing agency's interpretation of the statute is reasonable. *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778. In this case, the court must determine if VA reasonably exercised the discretion afforded under the Act in deciding that the restricted competition provision of § 8127(d) would not operate to bar VA's use of the FSS to meet its procurement needs.

### C. VA's interpretation of the 2006 Act is reasonable.

 Plaintiff argues that, to the extent the language in the 2006 Act is ambiguous, VA has written an implementing regulation that clarifies this ambiguity by requiring VA to consider SDVOSB and VOSB set-asides for all acquisitions. In particular, plaintiff points to VAAR § 819.7005, which states:

> (a) The contracting officer shall consider SDVOSB set-asides before considering VOSB set-asides. Except as authorized by 813.106 [involving contracts exceeding the micro-purchase threshold up to $5 million], 819.7007 [involving awards to SDVOSBs of under $5 million on a sole source basis] and 819.7008 [involving awards to VOSBs of under $5 million on a sole source basis], *the contracting officer shall set-aside an acquisition for competition restricted to SDVOSB* concerns upon a reasonable expectation that,
>
> (1) Offers will be received from two or more eligible SDVOSB concerns; and
>
> (2) Award will be made at a fair and reasonable price.

*Id.* (emphasis added). Plaintiff argues that the language "the contracting officer shall setaside an acquisition for competition restricted to SDVOSB concerns" clearly creates a mandatory set-aside without any exceptions, and that this interpretation by VA, found in its regulations, is entitled to deference. Any other interpretation by VA, plaintiff argues, was developed only for the purposes of litigation and is not entitled to deference.

The government argues that plaintiff has mischaracterized the VAAR and that VA has reasonably decided to exclude FSS orders from application of the 2006 Act. The government asserts that VA's interpretation of the 2006 Act, as expressed in the preamble to the VAAR, is consistent with the statutory language and legislative history of the 2006 Act, which indicate that VA need not set aside each and every contract for SDVOSBs and VOSBs before ordering against the FSS. In regard to FSS procurements in particular, VA in the preamble of the final VAAR states:

> Comment: VA received a comment stating that the proposed rule was unclear whether it was intended to be applicable to task and delivery orders under the Federal Supply Schedule (FSS). The commenter indicated that although GSA has delegated to VA the authority to administer certain schedules, the delegation does not extend to policy implementation. The commenter recommended a revision stating that SDVOSB and VOSB set–asides and sole

source provisions do not apply at the FSS order level.

Response: We disagree with the commenter and reject the suggestion because *this rule does not apply to FSS task or delivery orders.* VA does not believe a change to the regulation is needed, and 48 CFR part 8 procedures in the FAR will continue to apply to VA FSS task/delivery orders. Further, *VA will continue to follow GSA guidance regarding applicability of 48 CFR part 19 of the FAR, Small Business Programs, which states that set-asides do not apply to FAR part 8 FSS acquisitions.* VA Acquisition Regulation: Supporting Veteran–Owned and Service–Disabled VeteranOwned Small Businesses, 74 Fed.Reg. 64,-619, 64,624 (Dec. 8, 2009) (emphasis added). The government asserts that VA's position that the 2006 Act's regulations "do[ ] not apply to FSS task or delivery orders" is reasonable, and entitled to deference. The court agrees.

■ As the government argues, the VAAR are silent as to the role of the FSS in relation to the set-aside program established by the 2006 Act. Where the text of a regulation is unclear or silent, the court may look to the preamble of the regulation to determine the administrative construction of a regulation. *See Fidelity Fed. Sav. and Loan Ass'n v. Cuesta,* 458 U.S. 141, 158 n. 13, 102 S.Ct. 3014, 73 L.Ed.2d 664 1982); *Wyo. Outdoor Council v. U.S. Forest Serv.,* 165 F.3d 43, 53 (D.C.Cir.1999) ("Although the preamble does not 'control' the meaning of the regulation, it may serve as a source of evidence concerning contemporaneous agency intent."). As noted above, the preamble accompanying the final VAAR states that the VAAR "do[ ] not apply to FSS task or delivery orders," and that the regulatory framework of FAR Part 8 will continue to apply to VA's FSS orders. VA Acquisition Regulation, 74 Fed.Reg. at 64,-624. The preamble further asserts, "Under

this final rule, a VA contracting officer *may restrict competition* to contracting with SDVOSBs or VOSBs under certain conditions. *Likewise,* sole source contracts with SDVOSBs or VOSBs are permissible under certain conditions. This final rule implements these special acquisition methods as a change to the VA Acquisition Regulation (VAAR)." *Id.* at 64,619 (emphasis added). In explaining the reasons for its rules, VA states in the preamble, "Specifically, this final rule *will allow VA contracting officers to* ... [r]equire set-asides for SDVOSBs or VOSBs above the simplified acquisition threshold when the contracting officer has a reasonable expectation that two or more eligible SDVOSBs or VOSBs will submit offers and that the award can be made at a fair and reasonable price that offers the best value to the United States." [15] *Id.* at 64,628 (emphasis added).

■ The court recognizes that the preamble to the regulations lacks the formality of the regulations themselves, and is therefore not entitled to *Chevron* deference. [16] However, the agency's interpretation of the statute found in the preamble is still entitled to deference in so far as it has "the power to persuade," *Skidmore,* 323 U.S. at 140, 65 S.Ct. 161, based on the agency's consistency, formality, expertise and if the agency's determination fits with prior interpretations. *See Mead,* 533 U.S. at 228, 234–35, 229, 121 S.Ct. 2164.

VA's interpretation of its rules in the preamble indicate that VA interpreted the terms of the Act, and the VAAR, as having no effect on its ability to use the FSS without limitation. The court finds that this interpretation is a reasonable use of the discretion implicitly granted by the statute, and is entitled to deference. VA's interpretation in the preamble has many of the characteristics

**15.** Similar language to the preamble of the final VAAR is found in the preamble to VA's proposed rules. *See* VA Acquisition Regulation: Supporting Veteran–Owned and ServiceDisabled Veteran–Owned Small Businesses, 73 Fed.Reg. 49,-141, 49,144 (Aug. 20, 2008).

**16.** In this regard, because both the statute and the regulations are silent as to the role of the

FSS, the court construes the statement in the preamble to ultimately interpret the statute itself, not just the VAAR. However, to the extent that VA is interpreting its own regulations rather than the meaning of the statute in the preamble, that interpretation is entitled to substantial deference. *Auer,* 519 U.S. at 461–63, 117 S.Ct. 905; *Sursely,* 551 F.3d at 1355.

favoring deference under *Skidmore v. Swift & Co.* First, VA's interpretation that the set-aside provisions of the 2006 Act do not apply to the FSS has remained consistent over time, and reflects a uniform approach on the part of the agency.[17] *Mead,* 533 U.S. at 234, 121 S.Ct. 2164. Second, VA's interpretation is not directly in conflict with the Act or the VAAR, which are silent on the role of the FSS in meeting the goals set by the Secretary. VA's interpretation of its abilities under the Act is also consistent with the legislative history of the Act, which expresses the intent that VA retain "options" to award contracts to SDVOSBs and VOSBs, and that VA would "exercise reasonable judgment" in meeting the Act's set-aside goals alongside VA's other small business goal obligations. Third, while VA's explanation of its interpretation of the Act, found in the preamble, is brief, it made clear the basis of VA's position—the traditional exemption of the FSS from set-aside programs—and was promulgated in the context of a notice-and-comment rulemaking procedure. Finally, VA's interpretation is consistent with the traditional relationship between set-asides and the FSS found in the FAR–namely, that agencies are not required to implement set-aside programs before or while using the FSS. See *K-Lak,* 98 Fed.Cl. at 8. Under these circumstances, the court finds that VA's interpretation of the statute, a reasoned interpretation made in the context of its notice-and-comment rulemaking procedures, is entitled to deference.

In sum, the court respectfully disagrees with the GAO's interpretation of the 2006 Act in the case at hand, and finds that VA's decision not to set aside the ENS contract at issue was not arbitrary, capricious, or contrary to law. The government is therefore entitled to judgment on the stipulated facts as to this particular procurement action.

## V. CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the stipulated facts is **DENIED**, and the government's cross-motion is **GRANTED**. The parties shall submit a status report by **December 10, 2012** indicating next steps in this litigation regarding plaintiff's two remaining bid protest claims. In addition, the parties shall indicate in that same status report whether they would like the court to direct entry of judgment under Rule 54(b) of the Rules of the United States Court of Federal Claims.

**IT IS SO ORDERED.**

---

17. Plaintiff argues that the government's particular position that it retains discretion to use the set-aside procurement methods in § 8127 of the Act if it chooses to meet the goals of the Act is a position developed only for litigation. However, because the government's argument is based, at bottom, on VA's preamble to its final rule, the court rejects this aspect of plaintiff's argument. Moreover, the VA press release plaintiff cites for the proposition that VA changed its position is consistent with VA's current position, stating that the 2006 Act "gave VA new authority 'for purposes of meeting [its] goals' for contracting with" SDVOSBs and VOSBs. Pl.'s Resp., Ex. 2. Finally, as noted above, to the extent that VA is interpreting its own regulations rather than the meaning of the statute in the preamble, that interpretation is entitled to substantial deference even if developed for litigation. *See supra* note 16.

