# United States Court of Appeals for the Federal Circuit

---

**KINGDOMWARE TECHNOLOGIES, INC.,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-5042

---

Appeal from the United States Court of Federal Claims in No. 12-CV-0173, Judge Nancy B. Firestone.

---

Decided: June 3, 2014

---

LAUREN B. FLETCHER, Wilmer Cutler Pickering Hale and Dorr LLP, of Washington, DC, argued for plaintiff-appellant. With her on the brief were AMY K. WIGMORE, GREGORY H. PETKOFF, AMANDA L. MAJOR, JOSEPH GAY, and CARLA J. WEISS, of Washington, DC.

ROBERT C. BIGLER, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were STUART F. DELERY, Assistant Attorney General, BRYANT G. SNEE, Acting Director, and PATRICIA M. MCCARTHY, Assistant Director.

GENE C. SCHAERR, Winston & Strawn LLP, of Washington, DC, for amicus curiae American Legion. With him on the brief was EIMERIC REIG-PLESSIS.

---

Before PROST, *Chief Judge*,[*] CLEVENGER, and REYNA, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* CLEVENGER.

Dissenting opinion filed by *Circuit Judge* REYNA.

CLEVENGER, *Circuit Judge.*

This is an appeal from the final judgment of the United States Court of Federal Claims ("Court of Federal Claims") on a matter of statutory construction. The Court of Federal Claims ruled in favor of the United States, *Kingdomware Techs., Inc. v. United States*, 107 Fed. Cl. 226 (Fed. Cl. 2012), and Kingdomware Technologies, Inc. ("Kingdomware") appeals. For the reasons set forth below, we affirm the final judgment of the Court of Federal Claims.

I

Kingdomware is owned and controlled by a service-disabled veteran. The Department of Veterans Affairs ("VA") certified Kingdomware as a service-disabled veteran-owned small business in September 2010 and re-certified Kingdomware in September 2012.

It has long been the policy of the United States to promote small businesses, including small businesses owned and controlled by veterans. Congress has expressed this policy through the Small Business Act, 15 U.S.C. ch. 14A, and stated its expectation that small

---

[*] Sharon Prost assumed the position of Chief Judge on May 31, 2014.

businesses generally will receive "a fair proportion of the total purchases and contracts for property and services for the Government . . . ." 15 U.S.C. § 644(a)(3). Veteran-Owned Small Businesses ("VOSBs") and Service-Disabled Veteran-Owned Small Businesses ("SDVOSBs") are expressly recognized in the Small Business Act. *Id.* § 632(q).

The policy directive to promote small businesses lies within the statutes and regulations that guide Government contract formation. The general policies and procedures for Government contracting are contained in the Federal Acquisition Regulation ("FAR"), 48 C.F.R. ch. 1, which implements the Office of Federal Procurement Policy Act of 1974, 41 U.S.C. ch. 7. Certain agency-specific contract regulations are established agency by agency, and contract regulations specific to the VA are stated in the Veterans Affairs Acquisition Regulation ("VAAR"), 48 C.F.R. ch. 8.

The overarching policy of the FAR generally demands that "[c]ontracting officers shall provide for full and open competition." 48 C.F.R. § 6.101(b). The Federal Supply Schedule ("FSS") exists as one of the tools for achievement of the overarching policy. The FSS was established by the General Services Administration ("GSA") to provide Government agencies with a "simplified process for obtaining commercial supplies and services at prices associated with volume buying." *Id.* § 8.402(a). FSS contractors agree to provide goods and services on the FSS at stated prices for given periods of time, thus permitting agencies to buy supplies and services directly from the FSS, rather than using traditional full and open competition contract tools for such purposes. FSS contracts are deemed to satisfy the conditions of full and open competition. *Id.* § 8.404(a).

Unless otherwise specified by statute or regulation, an agency has wide discretion to decide the method of con-

tracting to use, including the FSS. *Tyler Constr. Grp. v. United States*, 570 F.3d 1329, 1334 (Fed. Cir. 2009). The FAR specifies as a matter of contracting priority that an agency is encouraged to obtain goods and services from FSS contractors before purchasing from commercial sources, which include privately owned VOSBs and SDVOSBs. 48 C.F.R. § 8.004. The GSA considers its FSS program to be "the premier acquisition vehicle in government," accounting for 10% of overall procurement spending. *For Vendors – Getting on Schedule*, GENERAL SERVICES ADMINISTRATION (May 29, 2014), http://www.gsa.gov/portal/content/198473.

The FAR explicitly states that an agency placing an order against the FSS is exempt from requirements of the small business set-aside programs under FAR part 19. *See* 48 C.F.R. §§ 8.404(a), 8.405-5(a), 19.502-1(b). This exemption does not affect the VA's obligation under 48 C.F.R. § 19.502-1(a) otherwise to set aside contracts for competition among small businesses. "Although GSA awards most [FSS] contracts, it may authorize other agencies to award schedule contracts and publish schedules." *Id.* § 38.101(d). GSA has specifically delegated authority to the VA to procure medical goods and services under the VA Federal Supply Schedule Program. *Id.* § 38.000. For other goods and services, the VA uses the GSA FSS program. As a matter of policy, the VA encourages VOSBs and SDVOSBs to participate in the FSS program. Press Release, Dept. of Veterans Affairs, Statement on VA Veteran-Owned Small Business Contract (Oct. 28, 2011). Purchasing goods and services through the FSS is important to the VA and to VOSBs: in 2011, the VA used FSS contracts for 20% of its total spending, and 13% of these FSS expenditures went to VOSBs. Kathleen Miller, *Dispute Simmers Between VA and Veteran-Owned Small Businesses*, WASH. POST, Nov. 14, 2011, at A20.

## II

In 1999, Congress amended the Small Business Act to establish an aspirational Government-wide goal of awarding 3% of Government contracts to SDVOSBs. 15 U.S.C. § 644(g). History shows this 3% goal was not satisfied. For the 2001 fiscal year, SDVOSBs received but 0.24% of federal contract funds. *The State of Veterans' Employment*: *Hearing Before the H. Comm. on Veterans Affairs*, 108th Cong. 92 (2003) (statement of Angela B. Styles, Adm'r Fed. Procurement). And the VA awarded only 0.1% of its contracts to SDVOSBs in 2000, 0.2% in 2001, and 0.6% in 2002. *H.R. 1460, The Veterans Entrepreneurship Act of 2003; H.R. 1712, The Veterans Federal Procurement Opportunity Act of 2003; and H.R. 1716, The Veterans Earn and Learn Act: Hearing Before the Subcomm. on Benefits of the H. Comm. on Veterans Affairs*, 108th Cong. 9 (2003) (statement of Leo Mackay, Deputy Sec'y of Veterans Affairs).

Congress again amended the Small Business Act in 2003 to focus on SDVOSBs. The 2003 Act grants discretionary authority ("a contracting officer may award") to contracting officers, Government-wide, to award sole-source contracts of restricted dollar amounts to SDVOSBs when the contracting officer estimates receipt of a fair and reasonable price, and otherwise to award contracts on the basis of competition restricted to SDVOSBs "if the contracting officer has a reasonable expectation that not less than 2 small business concerns owned and controlled by service-disabled veterans will submit offers and that the award can be made at a fair market price." 15 U.S.C. § 657f. The discretionary authority to award contracts beyond the limited dollar amount specified for sole-source contracts requires satisfaction of the Rule of Two, a procedure well-known throughout the Government in connection with award of contracts set aside for competition restricted to small businesses.

History again showed a failure to achieve the goal of the Small Business Act to award 3% of Government contacts to SDVOSBs: only 0.605% of Government contracts went to SDVOSBs in 2005. H.R. REP. NO. 109-592, at 16 (2006) ("H.R. REP."). Consequently, in 2006 Congress returned to the subject of preferences for businesses owned and controlled by veterans, enacting a statute specifically and only directed to the VA. While the Small Business Act and previous amendments contained provisions relating only to SDVOSBs, the 2006 Veterans Act expanded the reach of the small business provisions to include both VOSBs and SDVOSBs.

In particular, Congress mandated that the Secretary of the VA "shall" establish a goal for each fiscal year for participation in VA contracts by VOSBs, and "shall" establish a goal for participation in VA contracts by SDVOSBs which "shall not be less" than the Government-wide goal set by the Small Business Act, which remained at 3%. 38 U.S.C. § 8127(a).

The Veterans Act of 2006, codified at 38 U.S.C. § 8127, gives contracting officers in the VA certain specific tools in subsections (b), (c), and (d) for achieving the goals to be set by the Secretary. As the House Report accompanying the statute explained: "[g]iven this new set of acquisition tools, there should be no reason for VA not to meet the veteran and service-disabled veteran small business contracting goals." H.R. REP., at 16.

For VA acquisitions for amounts less than what is called the simplified acquisition threshold (currently $150,000), § 8127(b) states that "a contracting officer [of the VA] may use procedures other than competitive procedures." Contracts under $150,000 can thus be sole-sourced to VOSBs and SDVOSBs without regard to the marketplace competitiveness of the price. Second, for contracts worth $150,000 up to $5,000,000, VA contracting officers "may" use procedures other than competitive

procedures to grant sole-source contracts to VOSBs and SDVOSBs if the particular business concern (1) "is determined to be a responsible source with respect to performance of such contract opportunity"; and (2) "in the estimation of the contracting officer, the contract award can be made at a fair and reasonable price that offers best value to the United States." 38 U.S.C. § 8127(c). The authority given to VA contracting officers in subsections (b) and (c) of § 8127 is expressly "for purposes of meeting the goals under subsection (a)." Third, Congress also authorized use of restricted competition procedures by VA contracting officers. Thus, in addition to the non-competitive methods authorized in subsections (b) and (c), Congress specified as follows in subsection (d):

> (d) USE OF RESTRICTED COMPETITION. – Except as provided in subsections (b) and (c), for purposes of meeting the goals under subsection (a), and in accordance with this section, a contracting officer of the [VA] shall award contracts on the basis of competition restricted to small business concerns owned and controlled by veterans if the contracting officer has a reasonable expectation that two or more small business concerns owned and controlled by veterans will submit offers and that the award can be made at a fair and reasonable price that offers best value to the United States.

*Id.* § 8127(d) (reciting the Rule of Two within the "if" clause).

As an assist for achieving the goals under subsection (a), Congress ordered the VA in subsection (i) to give contracting priority to SDVOSBs and VOSBs over other small business entities. *Id.* § 8127(i). Thus, SDVOSBs and VOSBs enjoy primary opportunities over other small businesses.

The VA promulgated regulations for § 8127(d). Unlike that subsection, which does not distinguish between VOSBs and SDVOSBs, the VA provided a separate regulation for each group, repeating in each regulation the statutory language that the contracting officer shall award contracts according to the Rule of Two. 48 C.F.R. § 819.7005 (providing for SDVOSBs); § 819.7006 (providing for VOSBs). The regulations further specify that contracting officers must give preference to SDVOSBs over VOSBs, and if only one SDVOSB makes an offer at a fair and reasonable price, the contracting officer "should make" the award to that offeror (thus converting the Rule of Two to a Rule of One). *Id.* § 819.7005. If no acceptable offer is made by a SDVOSB, the contracting officer "shall" withdraw the SDVOSB set-aside and process the procurement as a VOSB set-aside. *Id.* If only one VOSB makes a fair and reasonable price offer, the contract officer "should make" the award to that offeror, and if no acceptable offer is made, the contracting officer "shall" process the procurement under other small business set-aside programs. *Id.* § 819.7006. In the preamble to the regulations, the VA expressed its view that 38 U.S.C. § 8127(d) "does not apply to FSS task or delivery orders" and that the VA would "continue to follow GSA guidance regarding applicability of 48 CFR part 19 of the FAR, Small Business Programs, which states that set-asides do not apply to FAR part 8 FSS acquisitions." 74 Fed. Reg. 64,619, 64,624 (Dec. 8, 2009). In practice, the VA has continuously and consistently interpreted § 8127(d) as not affecting its authority to place orders under the FSS, and as granting it the flexibility to achieve the subsection (a) goals by any of the three § 8127 methods.

History has proven true the prediction made in the legislative history of § 8127. The 2006 Act did not become effective until 180 days after its enactment on December 22, 2006, and as a result was not fully implemented until the 2008 fiscal year. For that year and thereafter, the

Secretary set goals well beyond the previous 3% Government-wide goal for SDVOSBs, and achieved well beyond his stated goals, as shown below.

| Year | VOSB Goal | VOSB Attainment | SDVOSB Goal | SDVOSB Attainment |
|------|-----------|-----------------|-------------|-------------------|
| 2008 | 10% | 14.89% | 7% | 11.78% |
| 2009 | 10% | 19.98% | 7% | 16.96% |
| 2010 | 12% | 23.08% | 10% | 20.05% |
| 2011 | 12% | 20.50% | 10% | 18.22% |
| 2012 | 12% | 21.77% | 10% | 19.24% |

Memorandum from James B. Peake, Sec'y of Veterans Affairs, to Under Sec'ys, Assistant Sec'ys, Other Key Officials, Deputy Assistant Sec'ys, and Field Facility Directors (Jan. 28, 2008); Memorandum from Eric K. Shinseki, Sec'y of Veterans Affairs, to Under Sec'ys, Assistant Sec'ys, Other Key Officials, Deputy Assistant Sec'ys, and Field Directors (May 7, 2010); Memorandum from Eric K. Shinseki, Sec'y of Veterans Affairs, to Under Sec'ys, Assistant Sec'ys, Other Key Officials, Deputy Assistant Sec'ys, and Field Directors (Feb. 21, 2012); Summary of Veterans Affairs Veteran Owned Small Business Goals Achieved for FY 2006 through FY 2012 (Mar. 18, 2014).

## III

This suit arises from the following undisputed facts. In early 2012, the VA decided to implement an Emergency Notification Service in several of its medical centers. The VA contracting officer chose to use the GSA FSS to procure the needed services, and awarded the contract to a FSS vendor which was not a VOSB. On March 14, 2012,

Kingdomware, a certified SDVOSB and qualified FSS contractor, filed a bid protest with the Government Accountability Office ("GAO"). Kingdomware challenged the contract award as illegal on the ground that § 8127(d) always bars the VA from using the FSS without first invoking the Rule of Two and if satisfied, awarding the contract pursuant to the Rule of Two. The VA argued that subsection (d)'s requirement to invoke this Rule of Two applies only when the VA determines that this is necessary to meet the established contracting goals. The GAO, relying on its opinion in a previous case, *Aldevra*, B-406205, 2012 CPD ¶112 (Comp. Gen. Mar. 14, 2012), rejected the VA's argument, and issued a recommendation decision that the VA cancel the contract award already made and re-solicit the requirement as a SDVOSB set-aside, *Kingdomware*, B-406507, 2012 CPD ¶165 (Comp. Gen. May 30, 2012).

The VA soon after responded to the GAO and Kingdomware, announcing that it would not acquiesce in GAO's recommendation decision. The VA was on firm ground in refusing to accept the GAO decision. Although agencies often follow GAO recommendations in bid protest decisions "given the GAO's long experience and special expertise in such . . . matters," *CMS Contract Mgmt. Servs. v. Massachusetts Hous. Fin. Agency*, 745 F.3d 1379, 1384 (Fed. Cir. 2014) (internal citation omitted), these recommendations are not binding on an agency. *See Honeywell, Inc. v. United States,* 870 F.2d 644, 647–648 (Fed. Cir. 1989) (noting that the provisions of the Competition in Contracting Act "do not compel procuring agencies to obey the recommendation of the Comptroller General . . . ." (internal citation omitted)). By enforcing its long-standing interpretation of § 8127(d), the VA set the stage for Kingdomware's retreat to the United States Court of Federal Claims.

IV

Kingdomware filed its complaint on March 15, 2012. The parties stipulated to the facts as presented here and cross-moved for summary judgment. Both parties claimed victory on the plain meaning of § 8127(d). Kingdomware argued that the word "shall" in the statute is an unambiguous imperative that the Secretary can never use the FSS where the Rule of Two may be satisfied. The VA responded that Kingdomware's view writes out of the statute its obligation to set the goals for VOSB contract awards because a mandatory set-aside requirement for all contracts would obviate the need for the Secretary to establish goals. The VA argued that all the words in § 8127 have to be accounted for, and that "for the purposes of meeting the goals under subsection (a)" language in subsection (d) gives clear meaning to the "shall" imperative to use the Rule of Two procedure: § 8127(d) properly understood only compels the VA to conduct a Rule of Two analysis when the Secretary determines that doing so is necessary to meet the goals set by him under subsection (a).

The Court of Federal Claims reasoned that Kingdomware's interpretation of § 8127(d) is not supported by the plain language of the statute because it does not account for the mandatory goal-setting requirements of the section and the command that the Rule of Two procedure be used "for purposes of meeting the goals." Without addressing the VA's plain meaning interpretation, the Court of Federal Claims ruled that "the goal-setting nature of the statute clouds the clarity plaintiff would attribute to the phrase 'shall award' in subsection (d) of the Act, and renders the Act ambiguous as to its application to other procurement vehicles, such as the FSS." *Kingdomware*, 107 Fed. Cl. at 241.

Having found ambiguity in subsection (d) under the first step of the analysis laid out in *Chevron, U.S.A., Inc.*

*v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the Court of Federal Claims then assessed the reasonableness of the VA's consistent interpretation of the statute, which was first expressed in the preamble of the regulations promulgated for the 2006 Act after notice and comment rulemaking, and since articulated in policy statements, *see, e.g.,* Press Release, Dept. of Veterans Affairs, Statement on VA Veteran-Owned Small Business Contract (Oct. 28, 2011), and in litigation. Because the regulations themselves do not expressly state that the subsection does not apply to the FSS, the court declined *Chevron* deference to the VA's interpretation. But since the regulations only recite statutory language verbatim, and that language was found ambiguous, and because the regulations are wholly silent as to what role the FSS might play in meeting the goals set by the Secretary, the court considered granting deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), to the clear statement of the VA's interpretation in the regulations' preamble.

The Court of Federal Claims concluded that the VA's interpretation has many of the blazemarks favoring deference under *Skidmore*. First, the VA's view that § 8127 does not apply to the FSS has been consistent over time, reflecting a uniform administrative and litigation stance by the VA. Second, the VA's view is not directly in conflict with the words of the statute or the regulations, both of which are silent on the role of the FSS in meeting the Secretary's goals. Also, the legislative history of the statute expressed an intent that the VA retain the "option" to award contracts to SDVOSBs and VOSBs, and would "exercise reasonable judgment" in meeting the required set-aside goals alongside the VA's obligation to satisfy small business awards to other groups, such as women's owned businesses. 152 Cong. Rec. S11609-03, S11615, S11616 (Dec. 8, 2006). Third, the VA's interpretation as stated in the preamble of the regulations is crystal clear and was made in the context of notice and comment

rulemaking. Finally, the court noted that the VA's interpretation is consistent with the Government-wide traditional relationship between set-asides for small businesses and the FSS as found in the FAR, namely that agencies are not required to implement small business set-aside programs before or while using the FSS. The Court of Federal Claims thus found the VA's interpretation sufficient to warrant deference. Accordingly, the VA's cross-motion for summary judgment was granted.

Kingdomware timely appealed to this court. We have jurisdiction over the appeal under 28 U.S.C. § 1295(a)(3).

V

We review the Court of Federal Claims' grant of summary judgment without deference. *Dominion Res., Inc. v. United States*, 681 F.3d 1313, 1317 (Fed. Cir. 2012). In reviewing an agency's action in a bid protest case, we generally apply the Administrative Procedure Act's "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of a procedure required by law" standard of review. 5 U.S.C. § 706 (2)(A), (D); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). Here, since there are no factual or mixed factual and legal issues, and the only question is one of statutory construction, we apply the *Chevron* standard. *See Dominion*, 681 F.3d at 1317.

*Chevron* requires a reviewing court to determine by statutory construction, at the first step, "whether Congress has spoken to the precise question at issue." 467 U.S. at 842. If so, the "unambiguously expressed intent" of Congress prevails. *Id.* at 843. If, however, Congress has not spoken to the issue at hand, or has done so ambiguously, "the question for the court [at step two] is whether the agency's [interpretation] is based on a permissible construction of the statute." *Id.* If so, the agency's view of the law prevails. The interpretative exercise begins with

the language of the statute, *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 472 (1977), and uses "traditional tools of statutory construction," including the "statute's text, structure, and legislative history, and . . . the relevant canons of interpretation." *Delverde, SrL v. United States*, 202 F.3d 1360, 1363 (Fed. Cir. 2000). "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron*, 467 U.S. at 843 n.9.

In the case before us, Congress did speak directly to the question of the Secretary's authority to use the Rule of Two "for purposes of meeting the goals under subsection (a)," stating that for such purposes the Secretary "shall" use the Rule of Two procedures. For the reasons explained below, we conclude that Kingdomware's interpretation of § 8127(d) does not account for, and undercuts, the Secretary's mandatory authority to set the goals for contracts to VOSBs, and therefore is not a reasonable interpretation. By directly tying the mandatory Rule of Two contracting procedure set forth in subsection (d) to the achievement of the goals set pursuant to subsection (a), Congress's intent is clear. Congress intended the VA to meet the goals set by the Secretary. To meet the goals, the Secretary "shall" use Rule of Two procedures, "may" use the subsection (b) and (c) contract tools, and may elect to use the FSS at other times so long as the goals are met. We perceive no ambiguity in § 8127, which "is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 843; *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001).

## VI

Kingdomware argues that the mandatory language of § 8127(d)—"shall award"—requires the VA to conduct a Rule of Two analysis in all cases (other than those covered

by subsections (b) and (c)), including those cases where the VA would prefer to order against the FSS. Kingdomware points out that Congress used language almost identical to that in § 8127 in the 2003 Veterans Act, but importantly, changed the permissive term "may" to the mandatory term "shall."[1] It invokes the canon of construction that a change in legislative language generally gives rise to a presumption that Congress intended to change the meaning of the law. *See Midwest of Cannon Falls, Inc. v. United States*, 122 F.3d 1423, 1428 (Fed. Cir. 1997).

According to Kingdomware, the legislative history of the 2006 Act also supports its interpretation of § 8127(d). Kingdomware cites legislative history suggesting that the 2006 Act was passed following frustration with agencies' failure to meet the permissive VOSB contracting goals of the 1999 and 2003 Acts, and that Congress, in passing the 2006 Act to apply solely to the VA, "expect[ed] [the] VA to set the example among government agencies" for contracting with VOSBs. H.R. REP., at 15–16.

Kingdomware also points to legislative history wherein the bill's sponsor, John Boozman, explicitly noted the change in language from "may" to "shall" in § 8127(d), stating that "[t]he bill will essentially change what has been a 'may' to a 'shall' in terms of goals . . . ." *H.R. 1773,*

---

[1] The 2003 Veterans Act remains in effect and applies to all agencies. The 2006 Act, in contrast, applies only to the VA. The relevant provision of the 2003 Act states:

> In accordance with this section, a contracting officer *may award* contracts on the basis of competition restricted to small business concerns owned and controlled by service-disabled veterans if the [Rule of Two is satisfied].

15 U.S.C. § 657f(b) (emphasis added).

*the Native American Veteran Home Loan Act; H.R. 3082, the Veteran-Owned Small Business Promotion Act of 2005; and Four Draft Bills: Hearing Before the Subcomm. on Econ. Opportunity of the H. Comm. on Veterans Affairs*, 109th Cong. 2 (2005) (statement of Rep. John Boozman, Member, H. Comm. on Veterans Affairs).

Finally, Kingdomware notes that in the Report accompanying the legislation, the Committee on Veterans' Affairs stated that "small businesses owned and controlled by veterans and service-disabled veterans should *routinely* be granted the *primary opportunity* to enter into VA procurement contracts." H.R. REP., at 14–15 (emphases added). According to Kingdomware, this is evidence that Congress intended the VA to determine whether the Rule of Two was satisfied for every contract before it could look to the FSS.

Kingdomware assigns no substantive meaning to the phrase "for purposes of meeting the goals under subsection (a)," and instead contends that the words only state the objective for Rule of Two awards, i.e., to meet the Secretary's goals. Kingdomware is adamant that the "for purposes" words have no limiting effect. But Kingdomware does not explain why Congress intended "shall" to continue as an imperative after the Secretary's goals are achieved, or why Congress intended for the goals to be set not by the Secretary, but by whatever success VOSBs have under the Rule of Two in the marketplace.

Looking first to the text of the statute, the VA notes that the mandatory language of subsection (d)—"shall award"—is preceded by the phrase "for purposes of meeting the goals under subsection (a)." While Kingdomware maintains that this phrase is merely hortatory, the VA argues that it must be given effect, and that, read as a whole, the provision mandates a Rule of Two analysis only for those contracts the VA has decided are necessary "for purposes of meeting the goals under subsection (a)."

Under § 8127(a), the VA is required to set VOSB contracting goals with a mandatory statutory floor. The VA points out that it retains significant discretion under this subsection to set the numerical value of these goals. According to the VA, this discretion would be meaningless, and the goal-setting provision of § 8127(a) would be rendered superfluous, if it were required to apply the Rule of Two for every contract. Under Kingdomware's interpretation of § 8127, the goal would be whatever number the Rule of Two produces, regardless of the Secretary's preference.

Responding to Kingdomware's argument that "shall" in the 2006 statute is necessarily entirely imperative because "may" limited the Rule of Two in the 2003 statute, the VA explains that "shall" in subsection (d) exists to distinguish "may" with regard to the non-competitive set-aside procedures of subsections (b) and (c). In support, the VA cites the legislative history of the 2006 Act which explains clearly that Congress preferred use by the Secretary of the Rule of Two over the permissive non-competitive procedures. H.R. REP., at 16. The VA thus reads subsection (d) in context with subsections (b) and (c) to give meaning to "shall" that does not preclude use of the FSS.

The VA also asserts that Kingdomware's reading of "shall" conflicts with its multiple small business contracting responsibilities. According to the VA, if it were to follow subsection (d)'s Rule of Two in every instance, in addition to respecting the contracting priorities of subsection (i), it would be unable to meet other small business contracting goals specified by the Small Business Act. Moreover, the VA points out that under the Small Business Act, including the 2003 Veterans Act amendments, agencies have always retained the discretion to use the FSS in lieu of following the Rule of Two. *See* 48 C.F.R. §§ 8.404(a), 19.502-1(b). It argues that a single wording change—from "may" in the 2003 Veterans Act to "shall" in

the 2006 Act—without further explicit guidance as to how the provisions of the 2006 Act interact with the FSS is insufficient evidence that Congress intended to disrupt the existing scheme here. According to the VA, Kingdomware's interpretation would lead to the untenable result wherein the VA is unable to use the FSS for even routine and minor purchases.

Despite its consistent practice of retaining the discretion to forego the Rule of Two when using the FSS, the VA notes that since the passage of the 2006 Act it has consistently set and exceeded ambitious VOSB contracting goals. This is evidence, in the VA's view, that its interpretation is consistent with the aims of Congress in passing the 2006 Act, as expressed in the legislative history.

## VII

It is a bedrock principle of statutory interpretation that each word in a statute should be given effect. *See Qi-Zhuo v. Meissner,* 70 F.3d 136, 139 (D.C. Cir. 1995) ("An endlessly reiterated principle of statutory construction is that all words in a statute are to be assigned meaning, and that nothing therein is to be construed as surplusage."); *see also Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1345 (Fed. Cir. 2010) (concluding that a party's proposed statutory interpretation "violat[ed] the rule of statutory construction that Congress does not use unnecessary words.").

Kingdomware's interpretation of subsection (d) assigns dispositive weight to the command term "shall," but ignores additional statutory language stating that this mandate is "for purposes of meeting the goals under subsection (a)." Under Kingdomware's interpretation, the statute's mandate requiring the VA to conduct a Rule of Two analysis would apply to every competitive contract contemplated by the VA without any regard for the VOSB contracting goals set under subsection (a), despite the provision's explicit reference to these goals. Indeed, King-

domware conceded at oral argument that under its interpretation of 38 U.S.C. § 8127(d), the VA must continue to apply a Rule of Two analysis for every contract even *after* it has met the goals set under § 8127(a). Oral Argument at 4:05–5:20. Further, as the VA points out, if § 8127(d) requires the agency to conduct a Rule of Two analysis for every contract irrespective of the goals set under subsection (a), this goal-setting provision is itself made superfluous. Because Kingdomware's plain meaning interpretation of § 8127(d) reads the words "for purposes of meeting the goals under subsection (a)" out of the statute and makes the mandatory goal-setting statutory provision unnecessary, it cannot stand.

The statutory scheme as a whole links the Rule of Two mandate (denoted by the word "shall") in subsection (d) to the goals set under subsection (a). The mandate is, therefore, the required procedure for meeting these goals. It is fully consistent with subsection (a), which requires the VA to set goals for contracting with VOSBs, but grants the VA considerable discretion to set the value of these goals. Accordingly, the agency need not perform a VOSB Rule of Two analysis for every contract, as long as the goals set under subsection (a) are met. The correct reading of the statute according to its plain meaning puts the "shall" in subsection (d) in harmonious context with the discretionary "may" provisions of subsections (b) and (c), and assures that the goals of subsection (a) will be set by the Secretary, not the success or failure of the Rule of Two in the marketplace.

Congress enacted § 8127 out of frustration with the failure of agencies Government-wide to achieve the aspirational goals of 3% for SDVOSBs. In hearings leading up to the 2006 Veterans Act, the prime reason for failure to achieve the Government-wide goals was "the discretionary, not mandatory, nature of the goals." H.R. REP., at 15. As Rep. Boozman observed, § 8127 changed what had been a "may" to a "shall" in terms of goals. Congress chose

the VA to set the example among Government agencies by imposing on it the obligation to meet the goals set by the Secretary for both categories of veteran-owned small businesses. *Id.* Indeed, Congress anticipated that with the contracting tools provided in § 8127, the VA would be able to "meet, if not exceed" its contracting goals, *id.*, while at the same time fulfilling the goals it has set for other small business entities. 152 Cong. Rec. S11609-03, S11616 ("The goals for veteran and service-disabled veteran owned businesses are not in any way intended to prevent attainment of other set-aside goals.").

As it stands, there is no reason to compel the Secretary to set aside any contract for a Rule of Two inquiry before using the FSS notwithstanding his goals, as Kingdomware requests. The VA has consistently met the mandatory goals for procurement from SDVOSBs and VOSBs in each year since the Veterans Act of 2006 went into force, and Kingdomware does not contend otherwise. The Secretary has complied with his statutory mandate to both set goals and meet them, and, accordingly, the VA contracting officer's decision not to set aside the contracts at issue was not arbitrary, capricious, or contrary to the law.

## CONCLUSION

For the reasons provided above, we affirm the final decision of the Court of Federal Claims in favor of the VA.

## **AFFIRMED**

## COSTS

Each side shall bear its own costs.

# United States Court of Appeals for the Federal Circuit

---

**KINGDOMWARE TECHNOLOGIES, INC.,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-5042

---

Appeal from the United States Court of Federal Claims in No. 12-CV-0173, Judge Nancy B. Firestone.

---

REYNA, *Circuit Judge*, dissenting.

The majority holds that the 2006 Veterans Act does not require the Department of Veterans Affairs ("VA") to conduct a Rule of Two analysis in every procurement, as long as the VA satisfies its annual small business participation goals. I do not construe the 2006 Veterans Act as giving the VA discretion to decide whether to conduct a Rule of Two analysis. For this and other reasons set forth below, I respectfully *dissent*.

## I.

The plain language of the 2006 Veterans Act unambiguously requires VA contracting officers to conduct a Rule of Two analysis in every acquisition and does not exempt task or delivery orders under the Federal Supply Schedule ("FSS") from this imperative. Despite the

statute's clarity, the majority guts the Rule of Two imperative of its full force and effect by holding that a Rule of Two analysis is not required for every contract "as long as the goals set under subsection (a) are met."  Maj. Op. at 19.  Participatory goals, however, are aspirational, and an agency cannot refuse to set aside an acquisition solely because small businesses already receive a fair proportion of the agency's contracts.[1]  In relying entirely on prefatory language to second-guess Congress, the majority becomes policy maker and departs from our duty to enforce the proper interpretation of the statute regardless of our policy views.[2]

The statutory provision at issue could not be clearer. It provides that contracting officers "*shall* award contracts" on the basis of restricted competition whenever the contracting officer has a reasonable expectation that the Rule of Two will be satisfied:

> **(d) Use of restricted competition.**—Except as provided in subsections (b) and (c), for purposes of meeting the goals under subsection (a), and in accordance with this section, a contracting officer of the Department *shall award contracts* on the basis of competition restricted to small business concerns owned and controlled by veterans if the contracting officer has a reasonable expectation that two or more small business concerns owned

---

[1]    48 C.F.R. § ("FAR") 19.502-6(f); *see also LBM, Inc.*, B-290682, 2002 CPD ¶ 157 (Comp. Gen. Sept. 18, 2002).

[2]    *See Harbison v. Bell*, 556 U.S. 180, 198 (2009) (Thomas, J., concurring) (noting that it "'is not within our province to second-guess' the 'wisdom of Congress' action' by picking and choosing our preferred interpretation from among a range of potentially plausible, but likely inaccurate, interpretations of a statute" (quoting *Eldred v. Ashcroft*, 537 U.S. 186, 222 (2003))).

and controlled by veterans will submit offers and that the award can be made at a fair and reasonable price that offers best value to the United States.

38 U.S.C. § 8127(d) (emphasis added). This provision is part of a broader veteran-owned small business contracting program congressionally tailored to the VA, which requires the Secretary of the VA to increase small business contracting opportunities by establishing annual participation goals for veteran-owned small businesses ("VOSB") and service-disabled veteran-owned small businesses ("SDVOSB") in VA acquisitions. *Id.* § 8127(a)(1). This statutory program confirms the imperative character of subsection (d). Specifically, for contracts below the simplified acquisition threshold ($150,000), VA contracting officers "*may* use procedures other than competitive procedures" in awarding contracts to veteran-owned small businesses. *Id.* § 8127(b) (emphasis added). Similarly, for acquisitions valued above the simplified acquisition threshold but below $5 million, VA contracting officers "*may* award a contract" to a veteran-owned small business using noncompetitive procedures as long as certain requirements are met. *Id.* § 8127(c) (emphasis added).

In contrast, subsection (d) of the 2006 Veterans Act applies to all VA acquisitions and requires VA contracting officers to conduct a Rule of Two analysis in every acquisition, without limitation. Unlike subsections (b) and (c), which use discretionary language ("may use" and "may award"), subsection (d) uses mandatory language ("shall award"), and does not otherwise give discretion to VA contracting officers to decide whether to conduct a Rule of Two analysis. As the Supreme Court has noted, the word "shall" is ordinarily the language of command, and when the same statute uses both "may" and "shall," the normal

inference is that each is used in its usual sense and that the former is permissive, the latter mandatory.[3]

Consistent with the 2006 Veterans Act's imperative, the Government Accountability Office ("GAO") has sustained more than seventeen protests in response to the VA's refusal to comply with § 8127(d).[4]  As the GAO held, "The provisions of both the VA Act and the [VA Acquisition Regulation] are unequivocal; the VA 'shall' award contracts on the basis of competition restricted to SDVOSBs where there is a reasonable expectation that two or more SDVOSBs will submit offers and award can be made at a fair and reasonable price."  *Aldevra*, B-405271, 2011 CPD ¶ 183 (Comp. Gen. Oct. 11, 2011).  The GAO further concluded that "the VA Act requires, without limitation, that the agency conduct its acquisitions using SDVOSB set asides where the necessary conditions are present." *Id.*

The majority summarily dismisses any reliance on the GAO's construction, noting that "the VA was on firm ground in refusing to accept the GAO decision."  Maj. Op. at 10.  Yet, we have long noted that GAO recommendations, although not binding, are nevertheless "instructive in the area of bid protests."[5]  The Court of Federal Claims routinely "'give[s] due weight and deference' to GAO recommendations 'given the GAO's long experience and

---

[3]    *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947); *see also Kentucky, Educ. Cabinet, Dep't for the Blind v. United States*, 424 F.3d 1222, 1227 (Fed. Cir. 2005).

[4]    U.S. Gov't Accountability Office, B-158766, *GAO Report to Congress for Fiscal Year 2012* (Nov. 13, 2012).

[5]    *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1038 n.4 (Fed. Cir 2009) (citing *Planning Research Corp. v. United States*, 971 F.2d 736, 740 (Fed. Cir. 1992)).

special expertise in such bid protest matters.'"[6]     The majority ignores that GAO's experience and special expertise is such that "[a]n agency's decision to disregard a GAO recommendation is exceedingly rare." *Id.*     Indeed, we recently acknowledged that "from 1997-2012, the GAO issued 5,703 merit decisions and sustained 1099 protests; during that period, an agency disregarded the GAO's recommendation only ten times." *Id.* at 1384-85.     Hence, although not binding precedent, the GAO "plays an important role in the resolution of contested procurement decisions," and its construction of the 2006 Veterans Act is consistent with § 8127(d)'s "unequivocal" imperative to conduct a Rule of Two analysis in every procurement. *Honeywell, Inc. v. United States*, 870 F.2d 644, 647-48 (Fed. Cir. 1989).

## II.

To override the clear imperative of § 8127(d), the majority relies on the provision's prefatory language to reason that requiring a Rule of Two analysis in every VA procurement "makes the mandatory goal-setting statutory provision unnecessary." Maj. Op. at 19.     Prefatory language is introductory in nature and does nothing more than explain the general purpose for the Rule of Two mandate.     The Supreme Court has noted, albeit in the context of constitutional construction, that "apart from [a] clarifying function, a prefatory clause does not limit or expand the scope of the operative clause" and that operative provisions should be given effect as operative provisions, and prologues as prologues. *District of Columbia v. Heller*, 554 U.S. 570, 578 (2008).     Here, the operative clause is that VA contracting officers must award con-

---

[6]     *CMS Contract Mgmt. Servs. v. United States*, 745 F.3d 1379, 1384 (Fed. Cir. 2014) (quoting *Baird Corp. v. United States*, 1 Cl. Ct. 662, 668 (1983)) (alteration in original).

tracts on the basis of restricted competition if they have a reasonable expectation that the Rule of Two will be satisfied, a mandate that cannot be limited by its prologue.

The majority takes an unusual step of collecting extrinsic evidence to show that "[t]he VA has consistently met the mandatory goals for procurement from SDVOSBs and VOSBs in each year since the Veterans Act of 2006 went into force[.]" Maj. Op. at 20. While the exact rationale for exploration outside the record is not clear, the majority apparently rests on these statistics to conclude that "there is no reason to compel the Secretary to set aside any contract for a Rule of Two inquiry" where the goals were met for the time period in question. *Id.* This is an improper construction of the statute, as it adds a limitation that does not exist in the plain words of the statute. "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Engine Mfrs. Ass'n v. South Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 253 (2004). Moreover, these statistics were not before the Court of Federal Claims or relied upon by either party, but were provided in response to a request during oral argument. As the appellant notes, the VA submission does not identify the source of the data and "appears to have been created specifically in response to the Court's request in this litigation." ECF#50, Appellant Letter to Court (Apr. 2, 2014). Significantly, there is no evidence in the record to show that VA contracting officers rely on, or have access to, these types of data in making contracting decisions, and the GAO has explicitly held that an agency's belief it has satisfied its small business goals does not affect its obligation to conduct a Rule of Two analysis.[7] In

---

[7]    *LBM, Inc.*, B-290682, 2002 CPD ¶ 157 (Comp. Gen. Sept. 18, 2002); *see also* FAR 19.502-6(f) (noting that

sum, the majority's use of this extrinsic evidence is post hoc rationalization constructed to shore-up an otherwise unsound construction of the statute.

### III.

The majority's reliance on the phrase "for purposes of meeting the goals" is also belied by the VA's own regulations, which contain no such language. Specifically, in 2009, the VA issued regulations reiterating the imperative to conduct a Rule of Two analysis in every acquisition. *See* 48 C.F.R. §§ 819.7005, 817.7006. These regulations, which use the mandatory phrase "shall set-aside," do not contain the phrase "for purposes of meeting the goals" or any other mention of the goals.[8] The VA's

---

agencies cannot refuse to set aside an acquisition solely on the basis that "[s]mall business concerns are already receiving a fair proportion of the agency's contracts for supplies and services").

[8]    The VA Acquisition Regulation provides:

(a) The contracting officer shall consider SDVOSB set-asides before considering VOSB set-asides. Except as authorized by 813.106, 819.7007 and 819.7008, the contracting officer *shall set-aside an acquisition* for competition restricted to SDVOSB concerns upon a reasonable expectation that,

    1)  Offers will be received from two or more eligible SDVOSB concerns; and

    2)  Award will be made at a fair and reasonable price.

48 C.F.R. § 819.7005 (emphasis added); *see also id.* § 819.7006 (applying same set-aside regulation to VOSBs). The exceptions mentioned at 48 C.F.R.

regulations thus unequivocally require the VA to conduct a Rule of Two analysis in every procurement, which is consistent with the agency's authority to write regulations as broadly as it wishes, subject only to the limits of the statute. *Auer v. Robbins*, 519 U.S. 452, 463 (1997). The majority downplays the regulation's imperative by pointing to the preamble to the regulations. Maj. Op. at 8 (quoting 74 Fed. Reg. 64,619, 64,624 (Dec. 8, 2009)). Again, statements made in a preamble as part of the notice-and-comment process cannot override the unambiguous language of the regulations themselves. That is, where the enacting or operative parts of a statute or regulation are unambiguous, the meaning of the statute or regulation cannot be controlled or limited by the language in the preamble.[9] Accordingly, the VA's refusal to conduct a Rule of Two analysis before proceeding to the FSS is at minimum a violation of its own regulations, if not also a violation of § 8127(d).

## IV.

The majority does not address the practical implications of its decision in light of the VA's *existing* obligation under the Federal Acquisition Regulation ("FAR") to conduct a Rule of Two analysis in nearly every acquisition exceeding $3,000. FAR 19.502-2.[10] By holding that the

---

§§ 813.106, 819.7007, and 819.7008 relate to sole-source awards and are thus not relevant to this appeal.

[9] *Wyoming Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 53 (D.C. Cir. 1999) (quoting *Assoc. of Am. Railroads v. Costle*, 562 F.2d 1310, 1316 (D.C. Cir. 1977)).

[10] The FAR contemplates two situations in which the contracting officer must conduct a Rule of Two analysis. For acquisitions exceeding $3,000 but less than $150,000, the contracting officer must award the contract on the basis of restricted competition unless he or she makes an affirmative finding that the Rule of Two is not

2006 Veterans Act's Rule of Two provision is discretionary, the majority effectively renders § 8127(d) superfluous and unnecessary in light of the FAR's existing Rule of Two requirement. Although the FAR exempts task or delivery orders awarded under FSS contracts from the general Rule of Two requirement, *see* FAR 19.502-1(b), the 2006 Veterans Act is devoid of any similar language that would allow the VA to proceed directly to the FSS without first conducting a Rule of Two analysis. Hence, the majority's holding reads this exemption into § 8127(d) and expands the VA's discretion to decide when to conduct a Rule of Two analysis, thereby undermining the statutory role of § 8127(d).

The majority, on the other hand, finds mischief in requiring contracting officers to continue conducting Rule of Two analyses after the agency's goals are met. The majority concludes that requiring a Rule of Two analysis in every VA procurement would render the goal-setting provision superfluous, as "the goal would be whatever number the Rule of Two produces, regardless of the Secretary's preference." Maj Op. at 17. The majority seemingly believes it is bad policy to require an agency to continue efforts to award contracts to small businesses once its participation goals are met, overlooking that participation goals are aspirations, not destinations. Indeed, the FAR explicitly provides that an agency may not refuse to set aside an acquisition solely on the basis that small businesses are "already receiving a fair proportion of the agency's contracts for supplies and services." FAR 19.502-6(f).

---

reasonably expected to be satisfied. *Id.* § 19.502-2(a). For acquisitions exceeding $150,000, "[t]he contracting officer *shall set aside*" the acquisition for small businesses "when there is a reasonable expectation that" the Rule of Two will be met. *Id.* § 19.502-2(b) (emphasis added).

The mischief feared by the majority is further refuted by the discretion retained by contracting officers in how they perform a Rule of Two analysis. Because the Rule of Two requires contracting officers to set aside an acquisition *only* if they have a reasonable expectation that (i) offers will be made by at least two responsible small businesses, and (ii) award will be made at fair market prices, contracting officers are entitled to exercise their business judgment in determining whether these two conditions are met. *See* 38 U.S.C. § 8127(d); FAR 19.502-2. The contracting officer's decision not to set aside a procurement is subject to a "highly deferential rational basis review" and will not be overturned absent a showing that his or her business judgment was unreasonable.[11] The contracting officer is not required to use any particular method of assessing small business availability, and factors such as "prior procurement history, market surveys and/or advice from the agency's small business specialist and technical personnel may all constitute adequate grounds for a contracting officer's decision not to set aside a procurement." *Raven Servs. Corp.*, B-243911, 91-2 CPD ¶ 203 (Comp. Gen. Aug. 27, 1991). The Rule of Two, therefore, does not diminish the contracting officer's discretion to ultimately conclude that there is (or is not) a reasonable basis for setting aside any given procurement for small businesses.

The majority's reticence to requiring agency advancement of small business participation beyond the aspirational goals is due to a misapprehension of the interplay between a Rule of Two analysis and agency-

---

[11] *Res-Care, Inc. v. United States*, 735 F.3d 1384, 1390 (Fed. Cir. 2013); *see also Information Ventures, Inc.*, B-294267, 2004 CPD ¶ 205 (Comp. Gen. Oct. 8, 2004); *Benchmade Knife Co., Inc. v. United States*, 79 Fed. Cl. 731, 738 (2007).

wide goals.  The former is undertaken by the contracting officer on a contract-by-contract basis, while the latter are set by the head of the agency and inform the agency's entire procurement process.   Under the majority's rationale, the participation goals established under the Small Business Act would also be rendered superfluous by the FAR's existing Rule of Two requirement, which applies in nearly every acquisition.   *See* 15 U.S.C. § 644(g)(1); FAR 19.502-1.  Such an outcome would overturn more than thirty years of federal procurement law upholding the Rule of Two as a legitimate method of ensuring that agencies award a "fair proportion" of contract dollars to small businesses.[12]   In fact, the FAR requires agencies to conduct a Rule of Two analysis under FAR 19.502-2 regardless of whether the agency's "small business goals have already been satisfied." *LBM, Inc.*, B-290682, 2002 CPD ¶ 157 (Comp. Gen. Sept. 18, 2002).

The real mischief here is that the majority opinion would saddle contracting officers with the obligation in every acquisition to determine the status of the agency's small business goals—expressed as percentages of total awarded contract dollars—but does not elaborate on how

---

[12]   *See, e.g.*, *Adams & Associates, Inc. v. United States*, 741 F.3d 102, 110 (Fed. Cir. 2014) (rejecting the argument that a "'fair proportion' determination must be made on a contract-specific basis"); *Delex Sys., Inc.*, B-400403, 2008 CPD ¶ 181 (Comp. Gen. Oct. 8, 2008) (noting that "[t]he origin of the Rule of Two predates the FAR" and that "it has been adopted as the FAR's implementation of the [Small Business] Act's requirements"); *Federal Acquisition Regulation (FAR) "Rule of Two"*, 49 Fed. Reg. 40,135, 40,136 (Oct. 12, 1984) ("This method of implementing the fair proportion of total contracts has been upheld by the Courts and the Comptroller General.").

contracting officers can determine that these goals have been "met" before the end of the fiscal year. Participation goals require agency officials to consider a range of factors in their broader acquisition policies well before a solicitation is issued or an individual contract is contemplated. The majority thus errs when it asserts that an obligatory Rule of Two requirement would obviate the goal-setting provision of the 2006 Veterans Act.

## V.

In sum, the majority adopts an untenable construction of the 2006 Veterans Act by holding that the agency need not perform a VOSB Rule of Two analysis for every contract, as long as the goals set under subsection (a) are met. The majority's holding deprives the Rule of Two mandate of its force and effect, it impedes congressional objectives regarding set asides, and it renders § 8127(d) inoperative and unnecessary. For these reasons, I *dissent*.